Larry D. HAWKINS, et al., Appellants,

v.

R. David HALL, et al., Members of the
District of Columbia Board of
Education,

and

American Federation of State, County,
and Municipal Employees, Local
2093, Appellees.

No. 86–786.

District of Columbia Court of Appeals.

Argued Feb. 12, 1987.
Decided Feb. 17, 1988.

Hugh J. Beins, with whom John R. Mooney and Kathleen A. Murray, Washington, D.C., were on the brief, for appellants.

Kimberlee Keller, with whom John C. Dempsey, Washington, D.C., was on the brief, for appellee AFSCME Local 2093.

James R. Murphy, Acting Corp. Counsel at the time of argument, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., entered appearances for appellees Hall, et al.

Before PRYOR, Chief Judge, and FERREN and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellants, four employees of the Board of Education, filed this suit in the Superior Court claiming that the Board of Education had unlawfully withheld union dues from their wages after the expiration of a collective bargaining agreement. They sought a declaratory judgment establishing the illegality of the Board's deduction of dues from their wages, an injunction against further deductions without proper authorization, and a refund of the unlawfully withheld dues, with interest. The court dismissed the complaint "without prejudice to refiling upon exhaustion of administrative remedies." Appellants contend that the

Superior Court had concurrent jurisdiction with the Public Employee Relations Board to resolve their claim against the Board of Education and Local 2093 of the American Federation of State, County, and Municipal Employees (AFSCME).[1] We hold that the Superior Court properly dismissed the case, requiring appellants first to exhaust the administrative remedies available to them before the Public Employee Relations Board.

## I

In July and August of 1985, appellants formally revoked their authorization for automatic deduction ("checkoff") of union dues from their wages, effective September 1, 1985. Despite the revocations, however, the Board of Education continued to withhold from appellants' paychecks an amount equivalent to their union dues, placing the money in an escrow account pending the ratification of a new collective bargaining agreement.[2] To prevent further withholding, appellants filed this suit, alleging that the Board had unlawfully converted their funds, in violation of 5 DCMR § 611.1(c) (1983)[3] and D.C.Code § 1–618.7 (1987). They asked the court to order the Board to return their money, to declare that the unauthorized dues checkoff was illegal, and to award damages.

AFSCME moved to dismiss appellants' suit, asserting that because the complaint alleged an unfair labor practice, appellants' claim must be presented to the Public Employee Relations Board (PERB), which had exclusive original jurisdiction under D.C. Code § 1–605.2(3) (1987), part of the District of Columbia Government Comprehensive Merit Personnel Act (CMPA). In the alternative, AFSCME maintained that appellants had alleged a violation of the collective bargaining agreement, and that they should therefore pursue their claims through the grievance procedures established under that agreement by AFSCME and the Board of Education. Appellants argued in opposition that the Superior Court had concurrent jurisdiction with the PERB, that the case did not involve a breach of the collective bargaining agreement, and that they should not be required to exhaust the grievance procedures because it would be futile to submit the dispute to AFSCME and the Board of Education, who were the very parties charged with unlawful activity. The court dismissed the entire complaint without prejudice. Appellants now ask us to reverse the order of dismissal and remand the case to the trial court for a decision on the merits of their claim.

## II

Appellants contend that they were entitled to seek relief in the Superior Court

---

1. At the time this suit was filed, Local 2093 was the certified representative of the bargaining unit to which these appellants belonged. Later, however, two locals of the International Brotherhood of Teamsters were certified by the Public Employee Relations Board as the new collective bargaining representatives.

2. D.C.Code § 1–618.7 (1987) provides:

   Any labor organization which has been certified as the exclusive representative shall, upon request, have its dues and uniform assessments deducted and collected by the employer from the salaries of those employees who authorize the deduction of said dues. Such authorization, costs and termination shall be proper subjects of collective bargaining. Service fees may be deducted from an employee's salary by the employer if such a provision is contained in the bargaining agreement.

   Many Board of Education employees authorize checkoffs of their union dues, which are then transmitted to the appropriate labor organizations. Under a collective bargaining agreement, appellants' dues were forwarded to AFSCME Local 2093 until the agreement expired in May 1985.

3. 5 DCMR 611.1 provides in pertinent part:

   The Board of Education shall extend the following rights with respect to the employee in a bargaining unit to the labor organization that is certified to represent the employees in that bargaining unit under the provisions of this chapter:

   \* \* \* \* \* \*

   (c) The right to membership payroll dues deduction upon presentation of an individually signed dues deduction authorization card for each member to whom the deduction shall be applied; however, the deduction shall be effective only during the periods when a ratified agreement is in effect between the Board and the labor organization, except as provided in § 618.

for the allegedly unauthorized deduction of union dues by the Board of Education. They assert that the CMPA vests concurrent jurisdiction over such disputes in both the Superior Court and the PERB. We hold, to the contrary, that the trial court was correct in ruling that appellants must first exhaust their administrative remedies. *See Newman v. District of Columbia,* 518 A.2d 698, 700–702 (D.C.1986) (public employees must exhaust administrative remedies on statutory claims under the Human Rights Act); *Williams v. District of Columbia,* 467 A.2d 140 (D.C.1983) (same).

It is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938) (footnote omitted); *accord, e.g., Tung v. W.T. Cabe & Co.,* 492 A.2d 267, 270 (D.C.1985). The exhaustion doctrine "serves to promote judicial efficiency by ensuring the development of a proper factual record for [judicial] review, and allows [the courts] to benefit by the application of agency expertise to the problem at hand.... In addition, recourse to the administrative process may afford complete relief and thus eliminate the need for any judicial involvement...." *Barnett v. District of Columbia Department of Employment Services,* 491 A.2d 1156, 1160 (D.C. 1985) (citation omitted); *see McKart v. United States,* 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969); *Rhodes v. Quaorm,* 465 A.2d 370, 372 (D.C.1983). The CMPA makes clear that the appropriate course for appellants is first to seek relief from the PERB; then, after the PERB issues an order, any aggrieved person may seek review of that order by filing a petition in the Superior Court within thirty days. D.C.Code § 1–618.13(c) (1987). "By ignoring the established hearing procedures, appellant[s] foreclosed the possibili-

ty that [their] claim might be resolved without recourse to the courts. This result is precisely what the exhaustion doctrine is intended to avoid." *Williams v. District of Columbia, supra,* 467 A.2d at 142 (footnote omitted). We hold that to avoid "premature interruption of the administrative process," *McKart v. United States, supra,* 395 U.S. at 193, 89 S.Ct. at 1662, appellants must first seek relief from the Public Employee Relations Board.[4]

■ Appellants nevertheless maintain that because their complaint included a claim of conversion, the Superior Court had jurisdiction to hear their case in the first instance. Appellants argue that under *Newman v. District of Columbia, supra,* they have no duty to exhaust administrative remedies when their claim is based, in whole or in part, on an alleged common-law tort such as conversion. On the present record, *Newman* is of no help to appellants.

Although the conversion claim was included in the complaint, the facts alleged did not establish a conversion. The complaint stated merely that the withheld dues had been "purportedly escrowed" pending ratification of a new collective bargaining agreement by the Board of Education and its employees. Placing funds in escrow under such circumstances is not a conversion. At oral argument on appeal, appellants attempted to present to us a stipulation, signed by both parties, stating that these funds had not been placed in escrow but had been sent directly to AFSCME. This stipulation was never before the trial court, however, and thus we may not consider it. *Kilian v. Allegheny County Distributors, Inc.,* 409 Pa. 344, 348–349, 185 A.2d 517, 519–520 (1962) (refusing to consider a stipulation offered by counsel on appeal because the stipulated facts were not presented to the trial court). Under D.C.Code § 17–305(a) (1981), our appellate review is confined to "the record on ap-

---

4. No contention is made here that it would be futile to require these appellants to exhaust their administrative remedies. *See Apartment & Office Building Ass'n v. Washington,* 343 A.2d 323, 332 (D.C.1975); *see also Barnett, supra,* 491 A.2d

at 1161 ("the claimant must make a 'strong showing' of compelling circumstances ... in order to persuade us to excuse a failure to exhaust"); *id.* at 1164 (concurring opinion).

peal," which in this case does not include the stipulation. *See Cobb v. Standard Drug Co.*, 453 A.2d 110, 111–112 (D.C.1982) (rejecting factual assertions by counsel on appeal which were unsupported by the trial record); *Harmatz v. Zenith Radio Corp.*, 265 A.2d 291, 292 (D.C.1970) ("Our function of review precludes the conduct of a trial de novo"). Irrespective of *Newman*, therefore, appellants' conversion claim does not entitle them to go directly into court without first exhausting their administrative remedies.

■ Appellants make one further argument. Relying on *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), and two federal district court cases,[5] they contend that a court may exercise concurrent jurisdiction with the PERB (by analogy with the NLRB) in a case involving dues checkoff revocations. The flaw in appellants' argument is that in the federal system Congress has made clear its intent "to pay the price of concurrent jurisdiction.... To strengthen collective bargaining, Congress chose to give labor organizations or those seeking relief against labor organizations a federal court remedy in addition to the administrative remedy it also set up." *Amalgamated Meat Cutters, supra* note 5, 405 F.Supp. at 1124 (citation omitted); *see, e.g.,* 29 U.S.C. §§ 185, 187, 412 (1982). The District of Columbia Council, by contrast, has revealed no such intent. Nowhere in the CMPA can we find any language reflecting a desire, or even an acquiescence, on the part of the Council to allow suits such as this to be brought in the Superior Court when the PERB plainly has subject-matter jurisdiction. Without a showing of

such legislative intent, appellants cannot prevail.

### III

■ On this appeal both parties invite us to decide whether the Board's withholding of union dues after an allegedly valid revocation of its authority to do so amounted to an unfair labor practice.[6] We decline the invitation. We hold instead that the Public Employee Relations Board has primary jurisdiction to determine whether a particular act or omission constitutes an unfair labor practice under the CMPA. Its decision is subject to review by the Superior Court under D.C.Code § 1–618.13 (1987), and the Superior Court's decision is in turn reviewable by this court under D.C.Code § 11–721(a)(1) (1981).

Under the District of Columbia Self-Government Act,[7] the District of Columbia Council was directed to establish a comprehensive merit personnel system, to replace the federal system which had previously controlled the District government's relations with its employees. The CMPA, enacted in 1978, was the result. *See generally District of Columbia v. Hunt*, 520 A.2d 300, 302 (D.C.1987); *Newman v. District of Columbia, supra,* 518 A.2d at 703; *American Federation of Government Employees v. Barry*, 459 A.2d 1045, 1048–1049 (D.C.1983). The Public Employee Relations Board was created by the CMPA with a mandate to "issue rules and regulations establishing a labor-management relations program to implement the policy set forth in [the CMPA]." D.C.Code § 1–618.2 (1987). The CMPA specifically states that the PERB "shall have the power to ... [d]ecide whether unfair labor practices

---

5. *Hayes v. Local 12, United Rubber Workers*, 523 F.Supp. 50, 53–54 (N.D.Ala.1981); *Amalgamated Meat Cutters Local 593 v. Shen–Mar Food Products, Inc.*, 405 F.Supp. 1122, 1124 (W.D.Va. 1975).

6. D.C.Code § 1–618.4(a) (1987), in pertinent part, defines an unfair labor practice by management as:
    (1) Interfering, restraining or coercing any employee in the exercise of the rights guaranteed by this subchapter;
    (2) Dominating, interfering or assisting in the formation, existence or administration of any labor organization, or contributing finan-

cial or other support to it, except that the District may permit employees to negotiate or confer with it during working hours without loss of time or pay; [and]
    (3) Discriminating in regard to hiring or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization, except as otherwise provided in this chapter....

7. Pub.L. No. 93–198, § 422(3), 87 Stat. 774, 791 (1973) (codified at D.C.Code § 1–242(3) (1987)).

have been committed and issue an appropriate remedial order...." D.C.Code § 1–605.2(3) (1987). Given this plain statutory language, we have no difficulty in holding that primary jurisdiction to determine unfair labor practice claims lies with the PERB, subject only to review by the courts under well-established principles of administrative law.[8]

Although this is an issue of first impression in the District of Columbia, we find support for our holding in the decisions of other courts, both federal and state, in the field of labor relations. For example, in a case similar to the one at bar, the Supreme Court of Pennsylvania stated that "the deduction of union dues from employees' salaries, if done without valid authorization by the employees affected, arguably constitutes an interference with or a restraint upon their right to refrain from joining or assisting in employee organizations of which the employees do not wish to be members.... As such, the acts of both employers and unions in causing such unauthorized deductions to be made, if proved to have occurred, may be unfair labor practices...." *Hollinger v. Department of Public Welfare*, 469 Pa. 358, 366–67, 365 A.2d 1245, 1249 (1976) (citation omitted). The court also ruled, however, that "jurisdiction to determine *whether an unfair labor practice has indeed occurred* and, if so, to prevent a party from continuing the practice is in the [Pennsylvania Labor Relations Board], and nowhere else." *Id.* (citations omitted; emphasis added). *See also Amalgamated Ass'n of Street Railway Employees v. Lockridge*, 403 U.S. 274, 302, 91 S.Ct. 1909, 1925, 29 L.Ed.2d 473 (1971) (stating that the Court's judgment on a jurisdictional issue did not express "any views on the substantive claims of the two parties" because "it is not the task of federal or state courts to make such determinations").

Another analogous case, albeit not squarely in point, is *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244–245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). In *Garmon* the Supreme Court held that whether a certain activity constituted an unfair labor practice under the National Labor Relations Act was an issue to be decided in the first instance by the National Labor Relations Board, not by the courts of the several states. The Court ruled that the Act pre-empted state court jurisdiction to regulate conduct that was arguably protected under the Act. Although the instant case presents no issue of federal-state pre-emption, the Court's discussion makes clear that the pre-emption doctrine, at least in the context of labor relations, is essentially a matter of primary jurisdiction, which in turn rests on the specialized expertise of administrative agencies to decide questions within their statutory domain. *See Drayton v. Poretsky Management, Inc., supra* note 8, 462 A.2d at 1118. The Court in *Garmon* specifically said that in dealing with activities that are "arguably subject to" the National Labor Relations Act, both state and federal courts "must defer to the exclusive competence of the National Labor Relations Board...." 359 U.S. at 245. The same reasoning applies here. Even if we were not obliged by D.C.Code § 1–605.2(3) to defer to the PERB on the issue of whether the conduct alleged here is an unfair labor practice, we would elect to do so, in our discretion, because of the PERB's special competence to deal with such questions.

---

**8.** Appellants contend that because this case also involves an alleged breach of the union's duty of fair representation, they are entitled to bring their claim directly before the courts without exhausting their administrative remedies. *See Vaca v. Sipes, supra,* 386 U.S. at 181, 87 S.Ct. at 912. We disagree. "Even if not all breaches of the duty are unfair labor practices ... the family resemblance is undeniable, and indeed there is a substantial overlap." *Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 170, 103 S.Ct. 2281, 2293–94, 76 L.Ed.2d 476 (1983). We think that, as a matter of sound judicial administration, we should leave it to the PERB in the first instance to decide whether a particular breach (or alleged breach) of the duty of fair representation is also an unfair labor practice. We are convinced that section 1–605.2(3) of the Code requires us to do so. But even if it did not, in these matters the courts should ordinarily defer to the expertise of the PERB, which has "special competence" to decide such questions. *See Drayton v. Poretsky Management, Inc.,* 462 A.2d 1115, 1118 (D.C.1983).

## IV

In summary, we hold, first, that before seeking relief in the courts, appellants must exhaust their administrative remedies before the PERB; and second, that the PERB has primary jurisdiction to decide whether certain conduct constitutes an unfair labor practice under the CMPA, subject to judicial review in the manner prescribed by D.C.Code §§ 1–618.13 (1987) and 11–721(a)(1) (1981). The order of the Superior Court dismissing appellants' complaint is

*Affirmed.*