DISTRICT OF COLUMBIA DEPARTMENT OF CORRECTIONS, et al., Appellants,

v.

TEAMSTERS UNION LOCAL NO. 246, Appellee.

No. 87–710.

District of Columbia Court of Appeals.

Argued Dec. 6, 1988.

Decided Feb. 15, 1989.

---

Susan S. McDonald, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellants.

Jonathan G. Axelrod, with whom John R. Mooney, Washington, D.C., was on the brief, for appellee.

Before FERREN, TERRY and SCHWELB, Associate Judges.

TERRY, Associate Judge:

The Department of Corrections fired Correctional Officer Woodie C. Head, Jr., for off-duty misconduct which the Department maintained was cause for adverse action. An arbitrator later ruled in favor of Head, reinstating him in his job and awarding him back pay. The Department sought review by the Public Employee Relations Board (PERB), contending that Head's reinstatement would be against public policy, but the PERB declined to review the arbitrator's decision. When the Department still refused to reinstate Head, an action to enforce the arbitration award was brought on his behalf by his labor union, Teamsters Local 246. The Superior Court granted the union's motion for summary judgment and ordered the Department to comply with the arbitration award. On this appeal the Department again asserts that Head's reinstatement would be contrary to public policy. Although the Department has a compelling case on the facts, the trial court's ruling was nevertheless correct as a matter of law. Accordingly, we affirm the judgment.

I

In February 1983 Woodie Head was employed as a correctional officer at the District of Columbia Jail. On February 24, while off duty, Head was driving his girl friend's car when a man called out to him from the curb. Because the man looked familiar, Head stopped the car and gave him a lift, although he did not know who he was. After a few moments, however, Head discovered that his passenger was a former inmate of the jail named William Martin. As the two men talked, Martin asked Head for $20 to buy a bag of heroin. Head gave him the money.

Shortly thereafter Head stopped the car, and Martin got out to make the purchase. Something led Head to suspect, however, that Martin did not buy any heroin, so when Martin returned to the car, Head asked for his $20 back. He asked for the money several times, but each time Martin refused. When Martin started to get out of the car, Head grabbed a hammer handle that his girl friend kept in the car and hit Martin in the face with it, cutting his mouth and breaking some front teeth. The

police were not called, and the two men parted company.

That same evening, at about 8:30 p.m., Head and his girl friend were leaving the Washington Hospital Center when they were confronted by Martin and another man. The two men attacked Head, and in the ensuing altercation his glasses were knocked off. Hospital security officers intervened and escorted Head, Martin, and the other man to the security office. Metropolitan Police officers arrested Head at the hospital and charged him with assault with a dangerous weapon, a felony under D.C.Code § 22–502 (1981). Head told the police that he and Martin had agreed to share the cost of a bag of heroin, implying that they would share the heroin as well. After his arrest Head continued to work at the jail, although his duties thereafter did not involve contact with inmates.

On February 1, 1984, Head accepted the government's offer of a plea bargain and pleaded guilty to a charge of simple assault, a misdemeanor under D.C.Code § 22–504 (1981). Less than a month later, in a letter dated February 27, the Department informed Head that an adverse action to remove him from his job was being initiated because he had been convicted of assault with a dangerous weapon in the Superior Court of the District of Columbia.[1]

After an administrative hearing, the Director of the Department, James F. Palmer, sent Head a removal letter dated March 9, 1984. In part, the letter read, "[Y]our conviction of felony as having been reduced to Simple Assault, I have concluded that the offense is sustained and warrants removal." Head filed a timely grievance pursuant to the collective bargaining agree-

ment in effect at that time,[2] and in due course a hearing was held before an arbitrator.

Mr. Palmer and his Assistant Director for Detention Services, Marion D. Strickland, appeared at the arbitration hearing. They argued that, regardless of whether Head was convicted of a felony or a misdemeanor, his removal nevertheless was warranted because his actions on February 24, 1983, did not comport with the rules, regulations, or expectations of the Department. Palmer and Strickland did not focus on the assault, but rather on Head's off-duty fraternization with an ex-inmate, which they said could be "grounds for insubordination if connected with some wrongdoing." Mr. Strickland also expressed a general concern that such fraternization might compromise the safety and security of the Department.

A few weeks after the hearing, the arbitrator issued his decision. He concluded that Head should be reinstated, that his removal should be converted to a thirty-day suspension, and that he should be made whole (*i.e.*, that he should receive back pay) for the time lost in excess of thirty days. The arbitrator ruled that an adverse action may be supported only by one of the twenty-one types of "cause" enumerated in the Comprehensive Merit Personnel Act (CMPA), D.C.Code § 1–617.1(d)(1)–(21) (1987). "Other causes, unless they can be found to be included under the 21, will not legally support an adverse action." Because conviction of a misdemeanor was not one of the twenty-one types of "cause" listed in the statute, he concluded, Head could not be discharged. The maximum sanction to which he could be subjected

---

1. Head, as a Career Service employee, was subject to adverse action, including removal from his job, only for "cause." D.C.Code § 1–617.1(b) (1987). The code lists twenty-one specific acts or types of conduct in its definition of "cause," including:

    Conviction of a felony. A plea or verdict of guilty, or a conviction following a plea of nolo contendere, to a charge of a felony is deemed to be a conviction within the meaning of this section. Notwithstanding the foregoing, cause under this paragraph with regard to uniformed members of the Metropolitan Po-

lice Department is deemed to be the commission of any act which would constitute a crime.

D.C.Code § 1–617.1(d)(10) (1987).

2. Head's bargaining unit was represented at that time by Local 1550 of the American Federation of Government Employees. After an election in August 1985, the AFGE was replaced as collective bargaining agent by Teamsters Local 246, the plaintiff below and appellee in the instant appeal.

was a "corrective" thirty-day suspension under D.C.Code § 1–617.1(a) (1987).

On August 23, 1985, the Department filed an Arbitration Review Request with the PERB, asking that the arbitration award be set aside. The PERB issued a decision and order on February 27, 1986, denying the Department's request for review on the ground, *inter alia*, that the award was not contrary to law or public policy.[3] The effect of the PERB's ruling was to uphold the arbitrator's award.

The Department did not seek further review in the Superior Court, as it had a right to do under D.C.Code § 1–605.2(12) (1987),[4] but made an internal decision not to reinstate Head. When Head's union, Local 246, learned of this decision, it asked that the PERB bring suit to enforce the arbitration award or, in the alternative, that it authorize the union to sue directly. After two months went by without any word from the PERB in response to its request, the union brought this suit against the Department and the Mayor of the District of Columbia.

The parties eventually filed cross-motions for summary judgment. The trial court denied the Department's motion, granted the union's motion, and entered a judgment enforcing the arbitrator's award

of reinstatement with back pay. It found the Department's general public policy argument unpersuasive in light of the plain language of the CMPA. Because Head's behavior on February 24, 1983, did not fall within any of the twenty-one causes for removal listed in section 1–617.1(d), the court, like the arbitrator and the PERB, concluded that the Department was prohibited from removing him for his actions on that date. We agree with the arbitrator, the PERB, and the trial court.

## II

■ We are dealing with the CMPA, a statute enacted in 1979 by the District of Columbia Council to supplant the federal laws which had previously governed personnel relations between the District and its employees.[5] In addition to adopting "a comprehensive merit system of personnel management for the government of the District of Columbia," D.C.Code § 1–601.1 (1987), the Council created the PERB, authorized it to select arbitrators who would resolve collective bargaining disputes in the first instance, *id.* § 1–605.2(4), and granted it "exclusive" jurisdiction to review any arbitrator's award that, *inter alia*, "on its face is contrary to law and public policy...." *Id.* § 1–605.2(6).[6] Given the

---

3. D.C.Code § 1–605.2 (1987) provides in pertinent part:

    The [PERB] shall have the power to ...:
    (6) Consider appeals from arbitration awards pursuant to a grievance procedure: Provided, however, that such awards may be reviewed only if ... the award on its face is contrary to law and public policy; ... Provided, further, that the provisions of this paragraph shall be the exclusive method for reviewing the decision of an arbitrator concerning a matter properly subject to the jurisdiction of the [PERB]....

4. Superior Court review of administrative decisions under the CMPA is governed by part XV of the Superior Court Civil Rules. Part XV, entitled "Agency Review," contains only one rule, which states in part that a petition for review must be filed "within thirty days after formal notice of the order or decision sought to be reviewed...." The PERB order was dated February 27, 1986. The Department did not file a petition for review within thirty days from that date. Indeed, the Department took no action until the union filed this suit on October 17, 1986.

Before ruling on the merits, the trial court opined that the Department's failure to file a timely petition for review "should preclude" it from mounting a collateral attack on the PERB order in the Superior Court. Other courts in other contexts have made similar rulings. *See, e.g., Chauffeurs Local 135 v. Jefferson Trucking Co.*, 628 F.2d 1023, 1025–1027 (7th Cir.1980), *cert. denied*, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981), cited with approval in *Jaffe v. Nocera*, 493 A.2d 1003, 1012 n. 13 (D.C.1985). Because we decide the case on other grounds, we need not reach this preclusion issue.

5. The Council acted in response to a congressional mandate in the District of Columbia Self-Government Act, Pub.L. No. 93–198, § 422(3), 87 Stat. 774, 791 (1973) (codified at D.C.Code § 1–242(3) (1987)).

6. Because this case arose from a grievance procedure established under a collective bargaining agreement, the PERB—and not the Office of Employee Appeals—had exclusive jurisdiction to consider the Department's appeal from the arbitration award. D.C.Code § 1–605.2(6)

PERB's statutory authority, the Department nevertheless asks us to conduct a *de novo* review and overturn the award on "public policy" grounds. We decline to do so for two reasons. First, long-established principles of administrative law require us to defer to the PERB's interpretation of the CMPA unless it is unreasonable or contrary to the statute's plain meaning. Second, the only public policy involved here is the policy established by the Council and found in the CMPA itself, specifically in the list of twenty-one types of "cause" in section 1–617.1(d). In the face of this specific statutory language and its legislative history, we cannot apply some free-floating notion of "policy" as the Department urges; to do so would impermissibly intrude into the domain of the legislature.

This court has held time and time again that it will accept and uphold the interpretation of a statute by the administrative agency charged with its execution, provided that the agency's reading is not inconsistent with the statute itself or its legislative history. *E.g., Smith v. District of Columbia Department of Employment Services*, 548 A.2d 95, 97 (D.C.1988) (collecting cases); *Tenants of 3039 Q Street, N.W. v. District of Columbia Rental Accommodations Commission*, 391 A.2d 785, 787 (D.C.1978); *see Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844–845, 104 S.Ct. 2778, 2782–2783, 81 L.Ed.2d 694 (1984). We have also specifically recognized the "special competence" of the PERB to decide matters entrusted to its expertise. *Hawkins v. Hall*, 537 A.2d 571, 575 (D.C.1988). These basic principles require us to sustain the PERB's decision in this case, which was that "a plain reading of the CMPA" supported the arbitrator's ruling. We cannot find "compelling indications that [the PERB's inter-

pretation] is wrong," and thus we must defer to it. *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969) (footnote omitted).[7]

In reviewing the PERB's interpretation of the CMPA, we look first at the words used by the Council in drafting the statute "to see if the language is plain and admits of no more than one meaning." *Davis v. United States*, 397 A.2d 951, 956 (D.C. 1979) (citation omitted). We must also read the statutory language "in accordance with its ordinary and usual sense, and 'with the meaning commonly attributed to it.'" *United States v. Thompson*, 347 A.2d 581, 583 (D.C.1975) (citation omitted); *see Addison v. Holly Hill Fruit Products, Inc.*, 322 U.S. 607, 617–618, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1944). In relevant part, D.C. Code § 1–617.1(b) reads: "A permanent employee in the Career or Educational Service ... may be suspended for more than 30 days, reduced in rank or pay, or removed from the Service only for cause...."[8] The words could not be plainer: permanent Career Service employees like Head may be removed "only for cause" and for no other reason. To define what it meant by "cause," the Council listed twenty-one acts or categories of behavior in section 1–617.1(d), which begins, "For the purposes of this section, cause shall be defined as follows: ...." That this is an exclusive list, and that the Council did not intend it to apply to conduct such as what Head did here, are evident when we apply the rules of statutory construction and examine the legislative history.

When a legislature expressly mentions one or more things in a statute, an inference arises that everything not mentioned is excluded. This inference is "a basic rule of statutory construction ... generally known by the Latin phrase *expressio unius*

(1987). The PERB's decision was subject to review in the Superior Court, *id.* § 1–605.2(12), and the Superior Court's decision comes to us in the ordinary course under D.C.Code § 11–721(a)(1) (1981).

7. "Indeed, we must sustain the [PERB's] interpretation even if [the Department] advances another reasonable interpretation of the statute or if we might have been persuaded by the alter-

nate interpretation had we been construing the statute in the first instance." *Smith v. District of Columbia Department of Employment Services, supra*, 548 A.2d at 97 (citations omitted).

8. There are exceptions for probationary employees and others serving under special appointments, but neither exception applies to Mr. Head.

*est exclusio alterius,* 'the mention of one thing implies the exclusion of another.'" *McCray v. McGee,* 504 A.2d 1128, 1130 (D.C.1986) (citations omitted). The CMPA lists twenty-one types of "cause" that can result in adverse action, and each is quite specific: "Incompetency," "Inexcusable neglect of duty," "Dishonesty," "Engaging in a strike," and so on. The statutory list contains no catch-all provision permitting adverse actions for any other reason. Consequently, for the Department to prevail, it must show that Head's off-duty agreement to split the cost of a bag of heroin (and perhaps the heroin itself) with a former inmate and his subsequent misdemeanor conviction for assaulting that ex-inmate fall within one of the twenty-one categories. The PERB's decision that it does not is supported not only by the language of the statute itself, but by the legislative history as well.

The District of Columbia Council patterned the CMPA's list of twenty-one types of "cause" after a similar list contained in the California Government Code, Cal.Gov't Code § 19572(a)-(v) (West 1980), except that the Council "made [the definitions] more narrow." HOUSE COMM. ON THE DISTRICT OF COLUMBIA, 96TH CONG., 1ST SESS., REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA ON THE DISTRICT OF COLUMBIA GOVERNMENT COMPREHENSIVE MERIT PERSONNEL ACT OF 1978, at 193 (Comm.Print 1979). Of particular significance here are three subsections in which the Council chose not to follow California's lead.

Under the California Code, disciplinary action may be taken against any employee convicted of a felony or "a misdemeanor involving moral turpitude." Cal.Gov't Code § 19572(k). Under the corresponding provision of the CMPA, however, only Metropolitan Police officers may be removed from their jobs for conviction of a crime other than a felony. D.C.Code § 1–617.1(d)(10).[9] Moreover, under the California Code, any employee may be disciplined for a "failure of good behavior either during or outside of duty hours" if such conduct discredits the employee's agency or employment. Cal.Gov't Code § 19572(t). The parallel District of Columbia subsection, however, is much narrower. Only Metropolitan Police officers (and not correctional officers) are subject to adverse action for off-duty failure of good behavior; all other employees may be removed only for "failure of good behavior during duty hours ...." D.C.Code § 1–617.1(d)(16). Finally, addiction to narcotics or habit-forming drugs is cause for discipline in California, Cal.Gov't Code § 19572(i), whereas only "on-duty use of drugs not prescribed and/or obtained illegally" is cause for adverse action under the CMPA. D.C.Code § 1–617.1(d)(8).

These differences make crystal-clear the Council's intent to preclude adverse action against a District employee (other than a Metropolitan Police officer) in Mr. Head's situation. A District of Columbia correctional officer who, while off duty, agrees to share the cost of a bag of heroin with a former jail inmate and later commits an assault on the ex-inmate when the deal falls through—an act that eventually results in his conviction of a misdemeanor—is not subject to adverse action, even though a California correctional officer almost certainly could be disciplined in the same circumstances.

As for the Department's "public policy" argument, the public policy governing this case has been established by the Council, and neither the PERB nor this court may override the legislature's intent by applying the kind of general public policy standard urged on us by the Department. In rejecting the Department's assertion, the trial court wrote in its memorandum opinion:

> [T]here is no general public policy exception which permits the Court to substitute its judgment for that of the arbitrator, in accordance with the Court's notions as to what is in, or not in, the public

---

9. Under subsection (10), conviction of a felony is a ground for adverse action, except that "with regard to uniformed members of the Metropolitan Police Department [cause includes] any act which would constitute a crime ...." This exception does not apply to correctional officers. See note 1, *supra.*

interest.... The [Council] in § 1–617.1 of the Act has expressed the public policy regarding the matters which are involved here. It provides that an employee, such as Mr. Head, shall be removed only for cause, and it sets forth, expressly, twenty-one acts or circumstances which constitute cause for removal. The conduct of Mr. Head is not among them. We could not have said it better.

We recognize that the Department is entrusted with the difficult task of safeguarding, disciplining, and rehabilitating persons in the District of Columbia correctional system. *See* D.C.Code § 24–442 (1988 Supp.). The operation of correctional facilities is a matter of undeniable public concern. *See generally Block v. Rutherford,* 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed. 2d 438 (1984). In the District of Columbia, however, the CMPA—and only the CMPA—expresses the policy that governs all personnel matters affecting public employees, not only in the correctional system but throughout the District government. We must therefore apply the express terms of the CMPA and not be led astray by our own (or anyone else's) concepts of "public policy," no matter how tempting such a course might be in a particular factual setting.[10]

### III

The Department's alternative arguments fare no better. Two are raised for the first time before this court, and all are without merit.

According to the CMPA, a permanent Career Service employee like Head is entitled to "reasons, in writing," for an adverse action, to notice of the action sought and the charges being preferred, and a copy of the charges. D.C.Code § 1–617.3(a)(1)(A)–(B) (1987). The only reason for removal provided in writing to Head by the Department was "conviction of a felony" (even though he was convicted of only a misdemeanor), and that was the only asserted "cause" discussed by the PERB in its decision and order denying review of the arbitration award. On this appeal, however, the Department argues that even if Head cannot be removed for conviction of a felony, the CMPA permits his removal either for insubordination because he fraternized with an ex-inmate, or for willful disobedience, or for discourteous treatment of the public because he assaulted the former inmate.[11] Of these three alternative grounds, insubordination was the only one even mentioned by the Department representatives at the arbitration hearing. For that reason, and because the other two grounds totally lack merit, see note 13, *infra,* we shall address only the insubordination claim in detail.

There is no evidence that Head was guilty of any insubordination prior to the 1983 incident with Mr. Martin; that incident, therefore, even if it was insubordination, would be his first offense. The

---

**10.** With respect to arbitration awards and public policy, the Department relies heavily on two Supreme Court decisions, *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), and *W.R. Grace & Co. v. Local 759, Int'l Union of United Rubber Workers,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed. 2d 298 (1983). In both of those cases, however, the litigants were private parties, and the Court was being asked to enforce and interpret arbitration provisions in private collective bargaining agreements. *See Misco, supra,* 108 S.Ct. at 370–371; *W.R. Grace, supra,* 461 U.S. at 759–761, 103 S.Ct. at 2180. The case at bar involves quite different issues of statutory construction and administrative law. Moreover, the "public policy" issue here concerns the legislature's specific determination of what acts so threaten the public weal as to warrant removal of a public employee, whereas in *Misco* and *W.R. Grace* the asserted public policy was based solely on "gen-

eral considerations of supposed public interests." *Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945), quoted in *W.R. Grace, supra,* 461 U.S. at 766, 103 S.Ct. at 2183; *see Misco, supra,* 108 S.Ct. at 374. We conclude that neither *Misco* nor *W.R. Grace* has any bearing on this case.

**11.** In relevant part, section 1–617.1 states:

(d) For purposes of this section, cause shall be defined as follows:

\* \* \* \* \* \*

(5) Insubordination;

\* \* \* \* \* \*

(11) Discourteous treatment of the public, supervisor, or other employees;

\* \* \* \* \* \*

(13) Willful disobedience except as authorized in this chapter....

District of Columbia Office of Personnel has promulgated a mandatory Table of Penalties to be used in disciplinary actions. 30 D.C.Reg. 5891 (1983). According to the table, an employee may be fired for a first offense of insubordination only when he or she refuses either "to comply with written instructions and/or direct orders by a superior which endangers the safety of persons or property, [or] to accept a detail, reassignment, or change in duty location or tour of duty." *Id.* at 5895. Because the latter reason is on its face inapplicable to this case, Head's misconduct must come within the former proscription if it is to be regarded as insubordination justifying dismissal.

■■■■ The Department made no attempt before either the PERB or the trial court to demonstrate how an off-duty assault on a former jail inmate could be considered an act of insubordination under the Table of Penalties, what "persons" and "property" were affected by the asserted insubordination, or what sort of conduct might have constituted insubordination in other cases.[12] The Department's failure to make such a showing before the arbitrator or the PERB bars any consideration of its insubordination claim by either the Superior Court or this court. *Fraternal Order of Police v. PERB*, 516 A.2d 501, 506 n. 5 (1986); *see* D.C.Code § 1–618.13(b) (1987). *See generally Miller v. Avirom*, 127 U.S. App.D.C. 367, 369–370, 384 F.2d 319, 321–322 (1967). In addition, the Department's failure to give Mr. Head written notice of

this charge before the arbitration hearing violated his statutory right to such notice under D.C.Code § 1–617.3, and at least arguably affected his constitutional right to due process of law. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 545–546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985).[13]

### IV

We are not unsympathetic to the Department's desire to fire Head. We know that the Department has the difficult and important task of maintaining discipline and security in the District's correctional system, and we understand why the Department would not want in its employ a correctional officer who in his off-duty hours participated with a former inmate in buying heroin and then assaulted the ex-inmate with a hammer handle. Nevertheless, the CMPA alone embodies the relevant public policy, and the statute and its legislative history speak plainly. They tell us that the Council did not intend such conduct by a correctional officer to be a ground for dismissal. If this result seems unsatisfying, then it is up to the Council to amend the statute. In the meantime, neither the courts nor the Department may ignore it.

The trial court's order enforcing the arbitrator's award is therefore *Affirmed.*

FERREN, Associate Judge, concurring:

I generally agree with the majority opinion and, in particular, with the conclusion

---

**12.** Despite the Department's shortcomings in this regard, the arbitrator on his own initiative considered whether Head's misconduct might be regarded as insubordination. He concluded that the misconduct violated Department of Corrections Regulation 1.25, which reads:

> *Relationships with Former Inmates—Association:* Employees are prohibited from associating in any manner with former inmates or the family members or known associates of former inmates, unless prior approval is given by the Superintendent.

The arbitrator went on to note that because not all violations of Department regulations rise to the level of insubordination, the circumstances of each case must be examined. Examining the facts of this case, the arbitrator found that although Head violated Regulation 1.25, he was not guilty of insubordination.

**13.** The charge of discourteous treatment is entirely without support in the record. In the context of D.C.Code § 1–617.1, discourteous treatment "of the public, supervisor, or other employees" can only refer to conduct by an employee in the performance of his or her duties. Mr. Head's assault on Mr. Martin, however, occurred when he was off duty and away from the situs of his employment. The claim of willful disobedience is close to frivolous. There are only four types of misconduct that can result in removal for a first offense of willful disobedience. Table of Penalties, *supra*, 30 D.C. Reg. at 5899. Head's conduct fits none of them.

Moreover, neither of these charges was made before the arbitrator or the PERB, and thus neither the Superior Court nor this court may consider them. *Fraternal Order of Police, supra.*

that the "twenty-one acts or categories of behavior in section 1–617.1(d)" comprise "an exclusive list" of causes justifying removal from the Service under D.C.Code § 1–617.1(b) (1987). *Ante* at 323. Although it obviously would be desirable for the Council of the District of Columbia to amend § 1–617.1(d) if it wishes to include, as a cause for removal, the type of conduct Officer Head engaged in, I do not believe this court should definitively say that "the Council did not intend" any of the causes listed in § 1–617.1(d) "to apply to conduct such as what Head did here." *Ante* at 323.

The majority stresses—and I agree—that this court has "specifically recognized the 'special competence' of the PERB to decide matters entrusted to its expertise." *Ante* at 323. Thus, it is not for us to volunteer our views on provisions in § 1–617.1(d)—such as subsection (11) ("Discourteous treatment of the public, supervisor, or other employees")—which, as the majority acknowledges, the PERB has not addressed in this case. *Ante* at 326 n. 13.

I write separately on this point simply to express concern that, in this case, we do not incidentally and improperly decide issues that are not presented here and yet may presently be in litigation before an arbitrator or the PERB.