**BOARD OF TRUSTEES, UNIVERSITY OF THE DISTRICT OF COLUMBIA, Appellant,**

**v.**

**Ernest R. MYERS, Appellee.**

**No. 90–CV–802.**

District of Columbia Court of Appeals.

Argued Dec. 5, 1994.

Decided Jan. 19, 1995.

James C. McKay, Jr., Asst. Corp. Counsel, with whom John Payton, Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for appellant.

James McConville, Annandale, VA, for appellee.

Before FERREN, SCHWELB, and FARRELL, Associate Judges.

Opinion for the court by Associate Judge FERREN.

Opinion concurring in part and concurring in the judgment by Associate Judge SCHWELB at p. 648.

FERREN, Associate Judge:

The Board of Trustees of the University of the District of Columbia (the Board) appeals from a trial court judgment, based on a jury verdict, awarding a university professor, appellee Ernest Myers, $36,000 in damages for breach of contract. We conclude that the Superior Court did not have authority to entertain Myers' claim because, as a union member, Myers had not exhausted his administrative remedies under the collective bargaining agreement with the Board. We therefore reverse and order dismissal of Myers' complaint.

## I.

Appellee Myers, who had been teaching in the Department of Human Resource Development since 1969, became an associate professor at the University of the District of Columbia (UDC) in 1976. He has been a member of the UDC Faculty association/NEA (the union). In 1983, Myers applied for promotion to the rank of full professor. Under the collective bargaining agreement in effect at the time between the union and UDC (the Master Agreement), the minimum eligibility requirements for promotion to full professor were (1) three years as associate professor and a "terminal degree" or, in the alternative, (2) a special act of the Board.[1] In 1976, Myers had completed a doctoral degree in Community Psychology from Union Graduate School, Yellow Springs, Ohio, a non-accredited institution at the time.[2]

On June 13, 1983, Myers received a faculty notice dated June 7, 1983, saying that he had been promoted to full professor. Myers testified at trial that he had signed and returned this notice the next day.[3] On June 16, 1983, he received a mailgram rescinding the promotion. Subsequently, a faculty notice dated June 18, 1983, reaffirmed his status as associate professor.[4]

Myers filed a complaint in Superior Court against UDC on May 6, 1986 alleging six breach of contract theories and two tort claims. He later amended his complaint to substitute the Board for UDC as the defendant. The Board moved to dismiss or, in the alternative, for summary judgment, on five grounds, including Myers' alleged failure to exhaust his administrative remedies under UDC's Master Agreement with the union. Contending that the Master Agreement's fourth-level procedure for the resolution of employee grievances was the "sole method used for the resolution of all complaints and grievances," the Board pointed out that Myers had failed to exhaust the fourth level, namely, the union's commencement of an arbitration proceeding on Myers' behalf. The Board accordingly maintained that the Superior Court lacked jurisdiction.

The trial court, rejecting the Board's jurisdictional argument, ordered dismissal, or granted the Board summary judgment, on all counts except Myers' breach of contract claims for academic years 1983–84 and 1985–86, respectively.[5] A jury returned a verdict for Myers, awarding him $36,000 in damages. The Board moved for a judgment n.o.v., a

---

1. The Master Agreement was amended in 1985 to provide that an associate professor would be eligible for promotion to full professor if, in lieu of the terminal degree, he or she had 36 graduate credits beyond a masters degree and 10 years of service as an associate professor.

2. There was some dispute as to whether Myers satisfied the terminal degree requirement under the Master Agreement in effect at the time. The Board contended that a terminal degree was understood to be a degree from an accredited institution, but, according to the faculty evaluation profile used for the 1982–83 academic year, Myers' doctoral degree from an unaccredited institution was recognized as a terminal degree.

Moreover, Professor George Zachariah, the president of the union from 1978 to 1986, testified at trial that he thought Myers was eligible for promotion in 1976.

3. Myers acknowledged, however, that the letter he had sent accepting the promotion was postmarked June 17, 1983.

4. Myers was eventually promoted to full professor for the 1987–88 academic year.

5. Myers did not apply for promotion for the academic year 1984–85.

new trial, or a remittitur, but the trial court denied the motion. Thus, this appeal.

## II.

■ As a member of the faculty union, Myers was bound by the exclusive employee complaint and grievance procedures established by Article IX of the Master Agreement. Generally, a District employee, subject to the D.C. Government Comprehensive Merit Personnel Act, D.C.Code §§ 1–601.1, *et seq.* (1992 Repl.) (CMPA), or to a CMPA-sanctioned collective bargaining agreement, may not maintain a common law action in court to remedy a grievance against the employer cognizable under CMPA, or under such an agreement, unless the employee has exhausted the administrative procedures provided in that agreement. *See Wilson v. District of Columbia,* 608 A.2d 161 (D.C.1992) (contract claim); *District of Columbia v. Thompson,* 593 A.2d 621 (D.C.) (tort claim), *modifying* 570 A.2d 277 (D.C.1990), *cert. denied,* 502 U.S. 942, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991). In *Jordan v. Washington Metro. Area Transit Auth.,* 548 A.2d 792, 796 (D.C.1988), we stressed that

> if the collective bargaining agreement establishes procedures which are intended to be exclusive for resolving employer-employee grievances ... and if the employee brings suit against the employer before those grievance procedures have been exhausted, the employer may defend on the ground that the employee has not exhausted the exclusive remedies available under the contract.

(citations and footnotes omitted).

■ Such an exhaustion defense is not necessarily foolproof, however; the employee may be able to overcome it, and thus proceed in court, by showing either that the "grievance procedures are unreasonable" or that "the hostility of the union officials makes a fair hearing impossible." *Id.* at 797 (citing *NLRB v. Industrial Union of Marine & Shipbuilding Workers,* 391 U.S. 418, 425–428, 88 S.Ct. 1717, 1722–24, 20 L.Ed.2d 706 (1968) and *Clayton v. International Union, UAW,* 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981)). In addition, the employee may be able to bypass administrative remedies under a collective bargaining agreement by showing that pursuit of these remedies would be futile. *See Grover v. St. Louis–San Francisco Ry. Co.,* 393 U.S. 324, 330, 89 S.Ct. 548, 551–52, 21 L.Ed.2d 519 (1969); *Winters v. Local 639, Int'l Bhd. of Teamsters,* 186 U.S.App.D.C. 315, 318, 569 F.2d 146, 149–50 (1977).

■ In the present case, Myers does not dispute that the grievance procedures under the Master Agreement were "intended to be exclusive for resolving employer-employee grievances." *Jordan,* 548 A.2d at 796. Moreover, everyone agrees that Myers satisfied the first three procedural steps required by that agreement: he (1) brought an informal complaint to the lowest appropriate management level, (2) sent a written grievance to the Vice President for Academic Affairs, and (3) filed a written appeal with the President of UDC. Myers, however, ostensibly failed to satisfy the fourth and last administrative requirement: (4) the union's commencement of an arbitration proceeding against UDC.[6]

As to this fourth level procedure, Myers argues that the decision whether to pursue arbitration is strictly a matter of the union's unfettered discretion,[7] and that because he

6. To demonstrate that he had pursued administrative remedies before bringing his grievance to court, Myers notes that he took the case to the Office of Employee Appeals (OEA) which dismissed for lack of jurisdiction. Because Myers is subject to a collective bargaining agreement and because this agreement (unlike some agreements, *see Thompson* 593 A.2d at 626 & nn. 5 & 7) does not provide for appeal to OEA as an option under the grievance procedure, Myers' OEA appeal was misdirected and thus irrelevant. *See* D.C.Code § 1–606.2(b) ("Any ... grievance ... which has

been included within a collective bargaining agreement under the provisions of subchapter XVIII of this chapter [§§ 1–618.1 through –618.17], shall not be subject to the provisions of this subchapter" governing the Office of Employee Appeals.).

7. The Master Agreement provides: "if the grievance is not resolved at Level Three ... the Association [union] *may,* within twenty days of the determination made at Level Three, commence an arbitration proceeding by serving the other

did not have control over that decision, he must be said to have exhausted his administrative remedies when he satisfied the third-level procedure by filing a complaint with the University President. In support of Myers at trial, Professor George Zachariah, union president from 1978 to 1986, testified that, although the union had been aware of Myers' grievance from the time he had received the mailgram revoking the offer of promotion, the union had not found it feasible to take his case to arbitration because Myers was the only faculty member affected by UDC's interpretation of "terminal degree" as meaning a degree from an accredited institution. Zachariah added that the cost of taking a matter to arbitration was high because UDC always appealed an arbitration request. In short, according to Zachariah, the union could not afford to support Myers through arbitration.

Myers takes the position that this decision by the union relieved him of any burden to pursue administrative remedies further under the Master Agreement. The parties agree that Myers satisfied any obligation he may have had to ask for arbitration under level four of the Master Agreement; thus, the parties agree that Myers' claim, at that point, was committed to the union's discretion. But, contrary to Myers' position, this does not necessarily mean that, based simply on the union's unwillingness to pursue arbitration, Myers was free to bring his cause against the employer to court.

■ The Board contends, and we agree, that under CMPA and the Master Agreement—and under prevailing case law—a UDC union employee's only recourse against the UDC Board is arbitration, and that if the union is unwilling to take the case to arbitration, the employee's only remedy at that point is a complaint against the union filed with the Public Employee Relations Board (PERB), requesting an order compelling the union to arbitrate. *See Thompson*, 593 A.2d at 626 ("Employees dissatisfied with their

union's representation may appeal to PERB, and then seek judicial review in Superior Court, if they have a basis for alleging improper conduct.") (citations omitted); *Hawkins v. Hall*, 537 A.2d 571, 576 (D.C.1988) (Board of Education employees who claimed Board and union unlawfully withheld union dues from their wages required to exhaust administrative remedies at PERB, which had primary jurisdiction to decide whether certain conduct constituted unfair labor practice under D.C.Code § 1–605.2(3)); *cf. Fraternal Order of Police v. Public Employee Relations Bd.*, 516 A.2d 501, 504 (D.C.1986) (PERB has statutory authority under D.C.Code § 1–605.2(9) to "[m]ake decisions ... on charges of failure to adopt, subscribe, *or comply* with the internal or national labor organization standards for conduct of labor organizations") (emphasis added).

■ There can be no doubt that PERB has the power, under D.C.Code § 1–605.2(3),[8] to order the union to pursue arbitration of an employee's claim against the employer if PERB concludes that the union's refusal to arbitrate amounted to an unfair labor practice. That possibility existed here. Although the Master Agreement may appear to give the union unfettered discretion to decide whether to take a claim to arbitration, this discretion is limited by the union's duty to represent all employees fairly in the enforcement of the collective bargaining agreement. *See Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909–10, 17 L.Ed.2d 842 (1967). Thus, while an employee does not have an absolute right to have the union take the grievance to arbitration, the "union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." *Id.* at 191, 87 S.Ct. at 917. Rather, the "duty of fair representation imposes an obligation for a union to

---

party with a written notice of intention to arbitrate." (Emphasis added.)

**8.** D.C.Code § 1–605.2(3) provides:

The Board shall have the power to do the following:

\* \* \* \* \* \*

Decide whether unfair labor practices have been committed and issue an appropriate remedial order.

investigate a grievance in good faith." *Landry v. The Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir.1989) (citation omitted). Accordingly, even though the fourth-level administrative remedy under the Master Agreement—the decision whether to arbitrate—is committed to the union's sound discretion, this does not mean that an employee's administrative remedy is limited to three levels under that Agreement; as part of the fourth-level, the employee has a responsibility to file a claim against a union that refuses to arbitrate. *See Thompson*, 593 A.2d at 628–29.

■■■■ Contrary to Myers' interpretation of the Master Agreement, therefore, the union did not have absolute discretion in deciding whether to pursue arbitration of his claim; within the limits of "fair representation," the union had an enforceable duty to arbitrate. If Myers believed that the union's refusal to take his claim to arbitration violated this duty—that is, if he believed that the union's conduct "was arbitrary, discriminatory, or in bad faith, so that it undermined the fairness or the integrity of the grievance process," *Landry*, 880 F.2d at 852; *see also Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567–69, 96 S.Ct. 1048, 1057–59, 47 L.Ed.2d 231 (1976)—he had a right to file a claim against the union with PERB, subject to judicial review in the first instance in Superior Court. *See Thompson*, 593 A.2d at 626.[9] In sum, that was his only remedy.[10]

■■■■ By declining to file a claim against the union with PERB that could lead to arbitration of his grievance against the Board, Myers failed to take advantage of the final procedural remedy under the Master Agreement's grievance procedures. He therefore failed to exhaust administrative remedies. Myers has not shown that this failure was excusable on the ground that the required grievance procedure was unreason-

9. Under the federal Labor Management Relations Act, 29 U.S.C. § 185 (1988), an employee faced with a union's refusal to bring a complaint against the employer to arbitration may file a so-called "hybrid" action against the union and the employer together in federal court. *See Thomas v. United Parcel Serv.*, 890 F.2d 909, 914 (7th Cir.1989); *Landry*, 880 F.2d at 850–51; *Cox v. C.H. Masland & Sons, Inc.*, 607 F.2d 138, 143 (5th Cir.1974). In *Vaca*, 386 U.S. at 186, 87 S.Ct. at 914–15, the Supreme Court concluded:

> [T]he wrongfully discharged employee may bring an action against his employer in the face of a defense based upon failure to exhaust contractual remedies, provided that the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of employee's grievance.

*Id.* (footnote and citations omitted). This conclusion was based on a finding that the NLRB did not have exclusive jurisdiction over interpretation of the scope of the "duty of fair representation," *id.* at 181, 87 S.Ct. at 912, and that courts accordingly had "traditional jurisdiction to curb arbitrary conduct by the individual employee's statutory representative." *Id.* at 183, 87 S.Ct. at 913.

In contrast, in *Hawkins*, 537 A.2d at 574, this court pointed out that the concurrent jurisdiction of the NLRB and the federal courts upheld in *Vaca* was the result of Congress's desire to give labor organizations, as well as employees seeking relief against these organizations, both an administrative remedy and a federal court remedy. We then noted, in contrast, that the Council of the

District of Columbia, in adopting CMPA, had revealed no similar intent to share jurisdiction between PERB and our local courts. We concluded that PERB had primary jurisdiction to resolve unfair labor practice claims under D.C.Code § 1–605.2(3). *See id.* at 575.

10. Under Myers' interpretation of the administrative scheme, arbitration could easily be ignored, and employees allowed to take their claims to court, simply by a union's arbitrary—including collusive—determination not to pursue the level four grievance procedures in the Master Agreement. This interpretation could lead to arbitration's becoming a rarely invoked, if not useless, fourth step in the administrative process. In *Thompson*, 593 A.2d at 634, we observed that

> the burdens of an employer's having to anticipate and deal with two, often substantially different, remedial systems (one of them protracted litigation) available at the election of each employee are likely to have a chilling effect on mandated and bargained personnel procedures—an effect that could debilitate the very foundation of the merit personnel system.

Furthermore, Myers' argument that he is entitled to bring a claim against the Board in court, without proceeding against the union, cannot be supported even by federal law that allows an employee to take an employer to court only in a "hybrid" action, *i.e.*, when joined with a claim against the union for breach of duty of fair representation. *See Landry*, 880 F.2d at 851; *supra* note 9. Myers has never asserted any basis for proceeding against the union.

able [11] or that union officials were hostile.[12] Nor has he demonstrated that pursuit of the full range of administrative remedies would have been futile. The fact that a union may decline to pursue an employee's grievance does not in itself reflect futility in exhausting administrative remedies; as we noted, the union has a discretionary role, consistent with its duty of fair representation, to decide whether to arbitrate (subject to PERB, and eventually court, review). The union, therefore, can moot the futility argument through exercising its legitimate right, under the collective bargaining agreement, to address the merits and say "No"; the union can properly refuse to use its funds to finance arbitration it believes in good faith, after investigating the employee's claim, would have a slim chance of success. *See Cox v. C.H. Masland & Sons, Inc.*, 607 F.2d 138, 145 (5th Cir. 1979); *Encina v. Tony Lama Boot Co.*, 448 F.2d 1264, 1265 (5th Cir.1971) (per curiam).

The question whether a union will violate its duty of fair representation by refusing to pursue arbitration for an employee, irrespective of the merits of a claim, simply because arbitration (followed by likely appeals) would be too expensive is an issue inherent in this case; but Myers has not presented it to us, since he has never faulted his union for failure to arbitrate, as far as the record shows. *See supra* note 12. Had Myers raised this issue with PERB in pursuit of his administrative remedies under the Master Agree-

ment, it is conceivable he might have proved his union wrong. His failure to make the attempt reflects a failure to exhaust his required remedies.[13]

Because Myers failed to exhaust administrative remedies under the Master Agreement and because this failure cannot be excused under prevailing legal doctrine, the Superior Court did not have authority to entertain Myers' claims. Accordingly, we must reverse and remand for entry of an order dismissing the complaint.

*So ordered.*

SCHWELB, Associate Judge, concurring in part and concurring in the judgment:

Time has not altered my view that *District of Columbia v. Thompson*, 593 A.2d 621 (D.C.), *cert. denied*, 502 U.S. 942, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991) (*Thompson II*), was incorrectly decided. *See id.* at 636–40 (Schwelb, J., dissenting). *Thompson II* and now *Wilson v. District of Columbia*, 608 A.2d 161 (D.C.1992) (per curiam) being with us, however, I cannot fault my colleagues' view that, under the Master Agreement, Professor Myers cannot simply skip Level Four. The Agreement states that the union "may" commence an arbitration proceeding, but this does not mean that it can arbitrarily refuse to represent a member with a meritorious complaint. On the contrary, in the processing of a grievance,

> *So, the association made what we believe is a correct decision not to arbitrate this particular case.* Because it's a futile exercise and that was his testimony.

(Emphasis added.) In addition, in his brief on appeal, Myers continues to acknowledge that the union's reluctance to arbitrate for a single employee "could be understandable."

---

**11.** Myers contends that the Board itself was hostile in that it typically (and unreasonably) appealed every arbitration request the union brought from time-to-time. He then argues that, as a result of this behavior, the Board should be deemed to have repudiated the Master Agreement. Myers does not document that the Board had unreasonably appealed arbitrations to the point that a court could say the Board had repudiated the Master Agreement. In any event, this argument does not imply that the grievance procedures themselves were unreasonable.

**12.** To the contrary, in closing argument at trial, Myers' counsel told the jury:

The problem is that, as Professor—Dr. Zachariah said, the Faculty Association did not have the funds or the ability to arbitrate with the university that appeals everything. That you just keep going on and on and on. In every single arbitration it ends up in court and they couldn't do that.

**13.** Myers also maintains that the possible administrative remedy of a claim against the union before PERB would have been futile because PERB does not have the power to give him the *remedy he sought: damages for his breach of contract claim.* As pointed out earlier, however, PERB has the power, under D.C.Code § 1–605.2(3), to order the union to take Myers' claim to arbitration if it PERB concludes that the union's refusal to do so constituted an unfair labor practice. Thus, an action before PERB would be a step toward resolution, through arbitration, of Myers' damages claim against the Board—his only remedy, but a damages remedy nonetheless, under the Master Agreement.

[t]he union need not, *and may not,* sacrifice the rights of the individual to what it deems to be in the interests of the union as a whole, as it often must do during contract negotiations.

*Thomas v. United Parcel Service, Inc.,* 890 F.2d 909, 919 (7th Cir.1989) (emphasis added); *see also Dement v. Richmond, Fredericksburg & Potomac R. Co.,* 845 F.2d 451, 457, 459–60 (4th Cir.1988).

An attempt by Professor Myers to compel the union to arbitrate his grievance would not necessarily have been futile. Given *Thompson II* and the Master Agreement, UDC had a right to expect that it could arbitrate with the union instead of litigating against Myers as an individual.