**DRIVERS, CHAUFFEURS AND HELPERS LOCAL UNION NO. 639, et al., Appellants,**

v.

**DISTRICT OF COLUMBIA, et al., Appellees.**

**TEAMSTERS LOCAL UNION NO. 639, Appellant,**

v.

**PUBLIC EMPLOYEE RELATIONS BOARD, Appellee.**

**TEAMSTERS LOCAL UNION NO. 639 and Teamsters Local Union No. 730, Appellants,**

v.

**PUBLIC EMPLOYEE RELATIONS BOARD, Appellee.**

Nos. 90–CV–417, 92–CV–217 and 92–CV–319.

District of Columbia Court of Appeals.

Argued April 19, 1993.
Decided Sept. 27, 1993.

Jonathan G. Axelrod, Washington, DC, for Local Unions Nos. 639 and 730, appellants.

LeAnn M. Johnson, Sp. Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for the District of Columbia Bd. of Educ., appellee.

Bruce A. Fredrickson, Washington, DC, for Public Employee Relations Bd., appellee.

Before SCHWELB, KING and SULLIVAN, Associate Judges.

SCHWELB, Associate Judge:

These consolidated cases require us to explore the specialized and somewhat arcane world of public employee labor relations and to resolve three largely unrelated controversies between the District of Columbia Public Schools (the School Board) and two local public employee unions (collectively the Union). In No. 90–CV–417 (Case No. 1), the Union contends that the Superior Court (Judge Evelyn C. Queen) erroneously declined to enforce certain dis-

puted portions of what the Unions describe as a final arbitration award relating to the proposed 1987–90 collective bargaining agreement. In No. 92–CV–217 (Case No. 2), the Union appeals from an order by the Superior Court (Judge Rufus G. King, III) dismissing for lack of jurisdiction, as untimely, the Union's petition for review of certain rulings by the Public Employee Relations Board (the PERB) regarding negotiations towards a 1990–93 collective bargaining agreement and, in the alternative, upholding the PERB's rulings on the merits. Finally, in No. 92–CV–319 (Case No. 3), the Union appeals from an order by Judge King in which he sustained a decision by the PERB holding that certain issues raised by the Union during negotiations for the 1990–93 agreement were within the prerogatives of management and therefore not a mandatory subject of negotiation.

In Case No. 1, we vacate the judgment and remand the case to the trial court for further proceedings. In Case No. 2, we hold that the Superior Court had jurisdiction to consider the Union's petition for review, but affirm on the merits. In Case No. 3, we affirm.

## I.

### CASE NO. 1

A. *Legislative and Regulatory Background.*

In order to place the controversy in Case No. 1 in context, it is necessary to summarize the legislative scheme and the applicable regulations.

Labor-management relations between the District of Columbia government and its employees are governed by the Comprehensive Merit Personnel Act (CMPA), D.C.Code § 1–601.1 *et seq.* (1992). The CMPA created the PERB, which administers the system of collective bargaining between agencies of the District government and the Unions which represent public employees. *Id.* §§ 1–605.1, 1–605.2, 1–618.2(a). The PERB is authorized, *inter alia,* to "[r]esolve bargaining impasses through fact-finding, final and binding arbitration, or other methods ... [and to] [m]ake a determination in disputed cases as to whether a matter is within the scope of collective bargaining." *Id.,* §§ 1–605.2(4), 1–605.2(5). The PERB is also empowered to issue appropriate regulations. *Id.* § 1–605.2(11).

Although the scope of collective bargaining under the CMPA is comparatively broad, the Council has designated certain "management rights" as to which the District and its agencies are not required to negotiate. *See id.,* § 1–618.8(a).[1] Adopting the three-category approach articulated by the Supreme Court in *NLRB v. Borg-Warner Corp.,* 356 U.S. 342, 349, 78 S.Ct. 718, 723, 2 L.Ed.2d 823 (1958), the PERB has held that there are "mandatory subjects over which the parties *must* bargain; permissive subjects over which the parties *may* bargain; and illegal subjects over which the parties *may not* legally bargain." PERB Opinion No. 43, at 2 (1982) (emphasis added).

If the parties, during negotiations, reach an impasse on any issue, they are required to notify the PERB, which selects an impartial person to serve as mediator.

---

**1.** D.C.Code § 1–618.8(a) provides that management
 shall retain the sole right ...
 (1) To direct employees of the agencies;
 (2) To hire, promote, transfer, assign and retain employees in positions within the agency and to suspend, demote, discharge, or take other disciplinary actions against employees for cause;
 (3) To relieve employees of duties because of lack of work or other legitimate reasons;
 (4) To maintain the efficiency of the District Government operations entrusted to them;

(5) To determine the mission of the agency, its budget, its organization, the number of employees, and the number, types, and grades of positions of employees assigned to an organizational unit, work project, or tour of duty, and the technology of performing its work; or its internal security practices; and
(6) To take whatever actions may be necessary to carry out the mission of the District government in emergency situations.

D.C.Code §§ 1–618.2(d); 1–618.17(f)(3). If the mediator is unable within thirty days to resolve the impasse, the issues are referred to arbitration. *Id.* The arbitration panel is required to select the last best offer of each of the parties as the basis for impasse resolution and to issue an appropriate award. *Id.*

If, at the times relevant to this appeal, an issue arose as to whether a particular matter was appropriate for collective bargaining, the party which proposed the matter was authorized, under procedures promulgated by the PERB, to file a "negotiability appeal" with the PERB. PERB Interim Rule § 106.1. Further

> [a] negotiability appeal shall not be accepted by [the PERB] if it is filed more than forty-five days (45) after a party rejects a proposal as being not negotiable.

PERB Interim Rule § 106.2. The obligation of the proposing party to file a negotiability appeal was thus triggered by the opposing party's rejection of the proposal as non-negotiable. In the event of a timely negotiability appeal, the PERB issued a written opinion in which it identified any negotiable issues; the parties could then resume negotiations as to those issues.

B. *The Course of the Collective Bargaining—Negotiation, Mediation, Arbitration.*

On June 24, 1986, the two locals to which we refer as the Union were jointly certified by the PERB as the exclusive bargaining agent for public school employees in five bargaining units.[2] The School Board and the Union agreed to binding interest arbitration of all unresolved items.

From June 1987 to February 1988, the parties engaged in extensive negotiation sessions, but were unable to resolve their differences. On March 2, 1988, at the Un-

ion's request, the PERB initiated its impasse resolution procedures and appointed a mediator. The mediator, however, was unable to settle the dispute. The Union then requested arbitration, and an arbitral panel was designated to resolve the impasse and render an award. The panel included an impartial Chairman, a Management-appointed member, and a Union-appointed member. On June 21, 1988, the parties submitted a list of open issues to the arbitral panel for resolution.

The School Board claims that, during the course of the arbitration, its representatives declared that nine of the Union's contract proposals would infringe on rights reserved to management and therefore were not proper subjects of collective bargaining.[3] The Union contends, on the other hand, that the School Board made no sufficient objection to the negotiability of these issues and, in fact, bargained as to each of them.

On September 30, 1988, the arbitral panel entered an award disposing of all issues, including those as to which the School Board now claims to have made a sufficient timely objection. This award was signed by all three members of the panel. On October 14, 1988, the impartial Chairman issued a "draft" opinion to which he attached a list of the contested items, and in which he stated that the award would be implemented only if the PERB determined that these items were negotiable. On November 7, 1988, however, the Chairman issued a "final" opinion in which he omitted the reference to the PERB or to the award being partly conditional, and stated only that

> [s]everal of the Union's proposals were declared by Management to be non-negotiable. The Union disagreed with Management's determinations.

---

2. These units included (1) operating engineers; (2) custodians; (3) transportation and warehouse service workers; (4) cafeteria managers; and (5) cafeteria workers.

3. These proposals included (1) grievance procedure; (2) safety and health; (3) inclement

weather work; (4) protection of rights; (5) work force changes; (6) hours of work for cafeteria managers; (7) hours of work for cafeteria workers; (8) hours for former 8–hour workers; and (9) holidays.

In light of these developments, the parties were unable to determine whether the panel viewed its entire award as final, or whether the contested provisions would be enforceable only if they were subsequently determined by the PERB to fall within the proper scope of collective bargaining. Accordingly, in July 1989, the School Board and the Union jointly sought an explanation of the opinion from the Chairman. The parties inquired whether and under what circumstances the items as to which the School Board was now contesting negotiability were to be implemented. The Chairman responded by letter dated August 4, 1989, as follows:

> During the deliberations of the Board of Arbitration, I expressed the view that the Union should proceed to the D.C. Public Employee Relations Board to challenge Management's declaration of non-negotiability. The Union member of the Board of Arbitration disputed my view that the Union had the burden of going forward. As I have stated to the Board members and to the parties, my arbitral role does not extend to ordering the procedures through which these negotiability determinations may be considered. Therefore, any clarification beyond these comments would exceed my arbitral authority in this dispute.

### C. The Trial Court's Decision.

On November 9, 1989, the Union filed a motion in the Superior Court requesting enforcement of the entire arbitration award including the contested items. On March 9, 1990, Judge Queen held a hearing on the motion. Ten days later, the judge entered an order in which she denied enforcement as to the contested items. Quoting the Chairman's draft opinion of October 14, 1988 (but without identifying it as a draft or mentioning the final opinion issued on November 7, 1988), the judge concluded that as to the contested items, the award was conditioned on a finding of negotiability by the PERB. The judge further concluded that "[t]he PERB has the exclusive

authority to interpret negotiability of public labor contracts and D.C.Code § 1–6.18.[8]." The judge noted the Union's claim that the School Board had "[e]ffected a waiver of the non-negotiability of these items," but made no findings of fact pertinent to this issue, concluding simply that "the Board could not give authority to the Panel to act contrary to D.C.Code § 1–6.18, to commit *an illegal act*," and that "the court cannot restrain itself in the face of *illegal actions*." (Emphasis added.)

Accordingly, without explaining her cryptic allusions to illegality, the judge stated that the award would be enforced with the exception of the nine contested items. As noted in the italicized language, her decision was obviously premised on her perception that it would have been unlawful for the School Board to negotiate with the Union with respect to these items, and that their non-negotiability could not be waived.[4]

### D. The PERB's Opinion No. 299.

Following the Superior Court's refusal to enforce the arbitral award as to the nine disputed items, the Union filed a negotiability appeal with the PERB as to five of them. The PERB's disposition of this negotiability appeal occurred after the trial judge's order, and it was not available to the judge at the time of her decision. The PERB's decision, however, is relevant to the proceedings on remand. Accordingly, we briefly summarize the proceedings before the PERB.

Following the filing of the negotiability appeal, the School Board challenged its timeliness and opposed the appeal on the merits. On March 18, 1991, a PERB hearing examiner issued comprehensive findings and recommendations totalling more than thirty-three single-spaced pages, in which he set forth in detail the history of the School Board's negotiations with the Union and of the mediation and arbitration that followed. While somewhat critical of both parties,[5] the hearing examiner's find-

---

4. The judge also denied the Union's request for discovery on the issue of waiver.

5. The hearing examiner faulted the Union to the extent that the School Board's stated position

ings basically supported the Union's position that the negotiability of the contested items was not sufficiently challenged.[6]

The hearing examiner concluded that, during the course of the proceedings, the School Board

> delayed or evaded Management's obligation to place the Union on notice of its objections to such proposals in an unambiguous and unequivocal manner so that the Union would be aware that *only* through a negotiability appeal to PERB would there be a final resolution of whether there could be meaningful bargaining over these matters.

(Emphasis in original.) The examiner further found that

> the Employer's written non-negotiability declarations were not provided to the Union until they were attached by the Impartial Arbitrator to the [draft] *OPINION* which issued well after the *AWARD* and, it is noted, the Employer never directly presented even this list to the Union.

By the time the Chairman issued his draft opinion, according to the hearing examiner,

> the Union [was] reasonably proceed[ing] on the basis of its view that, after the issuance of the *AWARD*, the Union had a final and binding award, review of which, it had been advised, was not within PERB's jurisdiction.

In spite of the foregoing findings, however, the hearing examiner recommended that the PERB treat the negotiability appeal as timely, and that the parties be directed to proceed to litigate the merits of that appeal.

The School Board filed objections to the hearing examiner's findings and recommendations and, on February 28, 1992, the PERB issued its Decision and Order.

PERB Opinion No. 299 (1992). The PERB rejected all of the School Board's challenges to the hearing examiner's decision and concluded, on the basis of his findings, that the Union was not effectively placed on notice of the School Board's claims of non-negotiability until after the arbitral panel had issued its award. The PERB held, however, that it could not entertain the negotiability appeal because the School Board had failed to interpose a timely challenge to negotiability. In the PERB's view,

> no issue of negotiability was established by [the School Board] during the required period, *i.e.*, "in connection with collective bargaining negotiation;" therefore, the period during which an issue of negotiability could have been raised has elapsed. [The School Board's] failure to establish a clear and unambiguous rejection of the disputed proposals as nonnegotiable, until after the Award was issued, precludes the establishment of the required basis for filing a negotiability appeal. Consequently, since no cognizable issue of negotiability in accordance with Interim Rule 106.1 exists, no basis for a negotiability appeal by the Union ("or forfeiture of its right to have this negotiability appeal resolved") can properly lie.

PERB Opinion No. 299 at 9. Citing *Department of Agriculture v. Federal Labor Relations Auth.*, 879 F.2d 655, 661 (9th Cir.1989), the PERB concluded that the School Board's failure to reject the Union's proposals as non-negotiable until after the arbitral panel's award precluded the School Board from contesting the award after the fact.

### E. Legal Analysis.

■ The trial judge's decision appears to have been premised on her perception that

> "must be found, at least, to have alerted the Union to the question of whether, and at what point, the Employer's assertions might have to be treated by the Union as a formal non-negotiability defense which had to be resolved by PERB."

**6.** According to the hearing examiner, the Union negotiators testified that the School Board rep-

resentative had never used the term "non-negotiable" or refused to discuss any of the contested issues; the School Board negotiator claimed that he had described the Union proposals as illegal or contrary to management rights, but did not recall having used the term "non-negotiable."

if the School Board was not required by law to negotiate with respect to an issue—if, in other words, an issue was not a mandatory subject of collective bargaining—then it would have been *unlawful* to submit that issue to arbitration, as non-negotiability could not be waived by the Board. We do not agree with this analysis.

So far as we can determine, the School Board does not contend that it would have been *unlawful* to negotiate about any of the contested issues or to submit them to arbitration. Indeed, there is simply no basis for a claim that negotiations over any of the nine items—grievance procedure, safety and health, inclement weather work, protection of rights, work force changes, working hours for cafeteria managers, working hours for cafeteria workers, working hours for former eight-hour workers, and holiday work—would have contravened the CMPA or any other provision of law.[7] As in *Borg–Warner, supra,* 356 U.S. at 349, 78 S.Ct. at 722, each of the Union's proposals was "lawful in itself," and each would be enforceable if agreed to by management; each was a "permissible, even if not an obligatory, subject of good faith bargaining." *Id.* at 354, 78 S.Ct. at 725 (Harlan, J., concurring). The School Board has not asserted the contrary.[8] Thus,

while a party is not "estopped to claim, because of a waiver, that the arbitrator's award violates the mandates of specific statutory and regulatory provisions," *Board of Trustees for State Technical Colleges v. Federation of Technical College Teachers, Local 1942, et al.,* 179 Conn. 184, 187, 425 A.2d 1247, 1251 (1979), no claim of statutory or regulatory violation is advanced here. The apparent issue between the parties was whether the Union's proposals addressed management prerogatives as to which the School Board could not be *compelled* to negotiate.

■■■ "As a general rule, participation in an arbitration hearing on the merits of a dispute will result in waiver of the right to raise the issue of arbitrability after the arbitrators have made their decision." *See, generally, Annotation,* Participation in Arbitration Proceedings as Waiver of Objections to Arbitrability, 33 A.L.R.3d 1242, 1244 (1970 & Supp.1993), and authorities there cited. This court has held that a party's failure to raise the issue of arbitrability by way of a motion for stay of arbitration, together with participation in the proceeding, forecloses that party from raising that issue in a subsequent application to vacate the award. *Jaffe v. Nocera,* 493

---

7. In fact, the principal management negotiator testified as follows before the PERB's hearing examiner with respect to a proposal which he had drafted

> Q: In Paragraph 2 of this [proposed] agreement, was it your proposal that if the Union would agree on the effective date that the Schools wanted, the Schools would implement all the negotiable issues as awarded by the arbitrator.
> A: Yes, sir.

The negotiator could not have made this proposal if he had viewed the Union's proposals as unlawful.

8. See note 7, *supra.* According to the Union,

> [t]he CMPA identifies several issues which are illegal subjects of bargaining. An employer cannot negotiate to eliminate a public holiday; nor can a union negotiate to create a public holiday. D.C.Code § 1–613.2; Legislative History of the District of Columbia Government Comprehensive Merit Personnel Act of 1978 (1979) at 189. They cannot negotiate

less than the statutory protections against reductions-in-force. D.C.Code § 1–625.2(d); D.C.Code § 1–625.2(a)(1); PERB Opinion No. 263 (1990). Parties could not negotiate over residency requirements. *AFSCME District Council 20 and General Hospital,* PERB Opinion No. 227 at 4 (1989); Legislative History at 197. Certain elements in the statutory deferred compensation system may not be altered by negotiations. D.C.Code § 47–3601(d); *Fraternal Order of Police and Metropolitan Police Department,* PERB Opinion No. 261 at 7 (1990). A union cannot negotiate to undermine an employee's statutory responsibility for his negligence. D.C.Code § 1–1216; PERB Opinion No. 263 at 7.

> All other issues are either mandatory or permissive subjects of bargaining.

The School Board has not challenged this analysis.

We have no occasion to decide in this case whether there are other "illegal subjects of bargaining," in addition to those enumerated by the Union. We discern no basis for concluding, however, that any of the items contested by the parties here raised any question of illegality.

A.2d 1003, 1010 n. 9 (D.C.1985).[9] "The objection to arbitrability must be specific." *Id.* n. 8. Moreover, in the context of the instant arbitration, it would be patently inequitable to permit Management to agree to negotiate and arbitrate issues not subject to mandatory collective bargaining, to secure concessions on other subjects in return, and then to withdraw its previous concessions and challenge portions of the arbitration award which are based on those concessions.

If, on the other hand, a party to an arbitration hearing has made a timely and sufficient objection to the arbitrability of a dispute or of any part of it, then no waiver will be inferred. *Annotation, supra,* 33 A.L.R.2d at 1244; *see, e.g., Local 719, American Bakery & Confectionery Workers v. National Biscuit Co.,* 378 F.2d 918, 921 (3d Cir.1967) (counsel's statement that "[w]e are proceeding in this case without recognizing the validity of your decision, Mr. Arbitrator, with respect to arbitrability" held sufficient to preserve objection). Accordingly, it was incumbent upon the trial judge, in determining whether the contested items in the arbitration award should be enforced, to make findings on the critical question whether the School Board had preserved or waived its right to object to the arbitration of these items.

If, as the School Board claimed, it had sufficiently put the Union on notice of its position that nine of the Union's proposals were not proper subjects of negotiation, then the Union was obliged, within forty-five days of receiving such notice, to file a negotiability appeal with the PERB. *See* PERB Interim Rule § 106.2, quoted at

page 5, *supra.* This is true because, as the judge correctly held, once negotiability has been properly placed in issue, it is the PERB which must determine whether the contested issues were negotiable, and therefore arbitrable. If, on the other hand, the School Board did not give sufficient notice to the Union of its position as to negotiability until after the arbitral panel had issued its award, then the School Board waived any objection to arbitrability, and the arbitral award must be enforced. *See Department of Agriculture v. Federal Labor Relations Auth., supra,* 879 F.2d at 661; *accord,* PERB Opinion No. 299, *supra.* By declining to enforce the contested portions of the award without making the requisite inquiry into waiver (or even permitting discovery on the issue), the judge in effect held that the Union was required to appeal to the PERB even if the School Board had never adequately contested negotiability and had therefore waived any objection to arbitration. This was error.

Accordingly, we remand Case No. 1 to the trial court with directions to make findings, sufficient for meaningful appellate review, on the matters detailed in this opinion. We note that, on remand, the judge will have available to her the evidentiary findings of the PERB's hearing examiner, as well as the decision of the PERB itself, on the issues which she will be obliged to decide. The determination whether to enforce an arbitration award is a judicial one, and cannot be delegated. We are confident, however, that on remand the trial judge will give appropriate consideration to the proceedings before the PERB which took place since her own decision.[10]

9. The rule that objections to arbitrability are waived unless they are asserted in timely fashion parallels principles fundamental to the judicial process; "[l]itigants should not be permitted to keep some of their objections in their hip pockets," *Hunter v. United States,* 606 A.2d 139, 144 (D.C.1992), *cert. denied,* — U.S. —, 113 S.Ct. 509, 121 L.Ed.2d 444 (1993), or to "take [their] chance[s] on a favorable verdict, reserving a right to impeach it if it happens to go the other way." *Id.* (quoting *Palmer Constr. Co. v. Patouillet,* 42 A.2d 273, 274 (D.C.1945)).

10. During the proceedings in the trial court, the School Board sensibly suggested to the judge

that, absent a clarification by the arbitral panel of the terms of its award, the judge remand the case to the PERB for a determination of negotiability. The School Board thus implicitly recognized the PERB's specialized competence to make this determination. The PERB has now held that negotiability was never sufficiently placed in issue by management until after the award, and the School Board, having suggested the PERB as an appropriate forum for adjudication of negotiability issues, may not be in the best position to ask the court to disregard the PERB's findings.

The Union contends that the School Board is precluded from resisting enforcement of the

## II.

### CASE NO. 2

#### A. The Facts.

Although, in 1990, as we have seen, the School Board and the Union were still at loggerheads over several issues pertaining to the 1987–90 collective bargaining agreement—indeed, some of those issues remain unresolved today—the parties were also busily engaged during that year in attempting to negotiate a successor agreement for 1990–93. Once again, they reached an impasse, this time over twenty-two of the Union's proposals. Attempting to resolve the deadlock, the Union filed three negotiability appeals with the PERB. On December 24, 1990, in Opinion No. 263, the PERB presented each side with at least some measure of holiday cheer, holding that some of the Union's proposals were negotiable in their entirety, some were negotiable in part, and some were not negotiable at all.

On January 22, 1991, the School Board filed a timely petition for review in the Superior Court with respect to two of the Union's proposals, claiming that they did not concern mandatory subjects of negotiation. On the same day, the Union filed a petition for reconsideration with the PERB, but took no action in the Superior Court. The PERB has no Rule expressly authorizing petitions for reconsideration, but does accept such petitions for filing and acts upon them.

On April 22, 1991, in Opinion No. 274, the PERB denied the Union's petition for reconsideration. On May 3, 1991, the Union filed a petition for review in the Superior Court. On January 17, 1992, Judge Rufus King of that court dismissed the Union's petition as untimely. In the alternative, the judge sustained the PERB's decision on

award because it failed to file a timely motion to vacate. *See Chauffeurs, Teamsters, Warehousemen and Helpers, Local No. 135 v. Jefferson Trucking Co., Inc.,* 628 F.2d 1023, 1026–27 (7th Cir.1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981); *cf. Pisciotta v. Shearson Lehman Brothers, Inc.,* 629 A.2d 520 (D.C.1993). Since the School Board may reasonably have believed, in light of the Chair-

the merits. The Union's appeal in Case No. 2 followed.

#### B. Timeliness.

■ The PERB, joined by the School Board,[11] contends that the trial judge correctly dismissed the petition for review as untimely. Because the threshold issue of timeliness goes to the trial court's subject matter jurisdiction, we are obliged to address it first. *Eisler v. Stritzler,* 535 F.2d 148, 151 (1st Cir.1976); *see also In re Plummer,* 608 A.2d 741, 749 n. 1 (D.C. 1992) (concurring opinion).

The PERB relies on the provision for judicial review in the CMPA, which states in pertinent part that

[a]ny person aggrieved by a final order of the [PERB] granting or denying in whole or in part the relief sought may obtain review of such order in the Superior Court of the District of Columbia by filing a request within 30 days after the final order has been issued.

D.C.Code § 1–618.13(c). Superior Court Agency Rule 1(a) also provides that a petition for review in that court must be filed

within 30 days after formal notice of the order or decision sought to be reviewed, unless a different time is prescribed by statute.

More than thirty days elapsed between December 24, 1990—the date of the PERB's original decision—and May 3, 1991, the day on which the Union filed its petition for judicial review. Accordingly, says the PERB, the plain language of the CMPA and of the Superior Court Rule means that the Union is out of luck, for its petition was filed far too late. The Union responds that its filing with the PERB of the motion for reconsideration tolled the running of the thirty-day period, and that the petition for

man's draft opinion, that the arbitral award did not unconditionally embrace the contested items, we do not rest our decision upon that ground.

**11.** The School Board has not filed a brief on this issue, but relies instead on the PERB's arguments.

judicial review was timely because it was filed within thirty days of the PERB's denial of that motion.

The parties have invited our attention to a number of cases which are said to be dispositive of this issue, but only one of those cited—*Outland v. Civil Aeronautics Board*, 109 U.S.App.D.C. 90, 284 F.2d 224 (1960)—is meaningfully in point.[12] In *Outland*, a group of pilots challenged their airline's seniority practices. On August 31, 1959, the Civil Aeronautics Board (CAB) issued an order denying relief. At some time within the sixty-day period for seeking judicial review, the pilots filed a petition with the CAB in which they sought reconsideration of the decision. The court's opinion does not disclose whether the CAB's rules contained any express provision for such motions. On November 2, 1959, the agency denied the motion for reconsideration. On December 28, 1959—within sixty days of the order denying reconsideration—the pilots filed a petition in the United States Court of Appeals for judicial review of the CAB's decision. The airline requested the court to dismiss the petition as untimely.

The court, in a unanimous opinion written by Judge (later Chief Justice) Burger, held unequivocally that "a timely petition for reconsideration tolls the 60-day period for filing a petition for judicial review." *Id.* at 93, 284 F.2d at 227. The court recognized that, under the federal Administrative Procedure Act, a motion for rehearing was not necessary to exhaust administrative remedies. *Id.* The court went on to hold, however, that

[w]here a motion for rehearing is in fact filed there is no final action until the rehearing is denied.... (Citation omitted.) Section 1009(c) does not command a motion for rehearing in order to reach finality by exhaustion of administrative remedies; it leaves that to each litigant's choice. But when the party elects to seek a rehearing there is always a possibility that the order complained of will be modified in a way which renders judicial review unnecessary. Practical considerations, therefore, dictate that when a petition for rehearing is filed, review may properly be deferred until this has been acted upon. The contrary result reached by the Ninth Circuit [13] has caused parties to file so called "protective" petitions for judicial review while petitions for rehearing before the Board were pending. A whole train of unnecessary consequences flowed from this: the Board and other parties may be called upon to respond and oppose the motion for review; when the Board acts, the petition for judicial review must be amended to bring the petition up to date.

*Id.* at 93–94, 284 F.2d at 227–28. Accordingly, the court concluded that the pilots' time for seeking judicial review did not begin to run until the motion for reconsideration was acted upon by the CAB, and that their petition was therefore timely. *Id.* at 94, 284 F.2d at 228.

Although *Outland* was decided under federal rather than District of Columbia law, we think the court's basic rationale should be followed pursuant to *M.A.P. v. Ryan*, 285 A.2d 310 (D.C.1971), and is persuasive on its merits in any event. *See also In re A.B.*, 486 A.2d 1167, 1167–68 (D.C.1984) (per curiam) (analyzing authori-

---

12. The Union relies heavily on *Frain v. District of Columbia*, 572 A.2d 447 (D.C.1990), but that decision sheds no light on the question here presented. In *Frain*, this court reiterated that a timely motion to alter or amend a judgment pursuant to Super.Ct.Civ.R. 59 tolls the running of the time for appeal, whereas a motion for relief from judgment pursuant to Rule 60(b) does not. *Id.* at 449–50. As we explained in *Frain*, however, this court's Rule 4(a)(2) explicitly provides that a timely Rule 59 motion (which must be filed within ten days) tolls the running of the appeal period, *id.* at 449, and Super.Ct.Civ.R. 60(b) explicitly states that a motion seeking relief under that Rule does not affect the finality of a judgment. In *Frain*, in other words, we simply applied the unambiguous language of the pertinent rules, and we had no occasion to decide whether a motion for reconsideration for which no explicit provision is made in an agency's rules, but which the agency routinely entertains, has a tolling effect.

13. Judge Burger's allusion was to *Consolidated Flower Shipments, Inc. v. Civil Aeronautics Board*, 205 F.2d 449 (9th Cir.1953), a decision which the court declined to follow.

ties and holding that a motion for reconsideration in a child neglect proceeding tolls the time for appeal even though the Superior Court's Neglect Rules do not specifically authorize such motions); *In re C.I.T.*, 369 A.2d 171, 172 n. 4 (D.C.1977); *Braniff Airways, Inc. v. Civil Aeronautics Board*, 79 U.S.App.D.C. 341, 342, 147 F.2d 152, 153 (1945).[14]

Neither *Jackson v. District of Columbia Employees' Compensation Bd.*, 537 A.2d 576, 577 (D.C.1988) nor *Totz v. District of Columbia Rental Hous. Comm'n*, 474 A.2d 827, 828–29 (D.C.1984), relied on by the PERB, addressed the question whether a timely motion for reconsideration tolls the running of the time for appeal. *Jackson* did not involve tolling at all, and in *Totz*, the motion for reconsideration was untimely. *In re A.B.*, *supra*, 486 A.2d at 1168 (explaining *Totz*).[15] We therefore hold that the Union's petition for review by the Superior Court was filed within the period prescribed by the statute and Rule, and that the Superior Court had subject matter jurisdiction.

### C. The Merits.

■ Judge King, however, also sustained on its merits the PERB's decision, announced in its Opinion No. 263 and reiterated in Opinion No. 274, that the working hours for attendance counsellors and certain aspects of a drug testing program for this group of employees were not mandatory subjects of negotiation. We agree.

■ We note at the outset that the members of the PERB are required by the CMPA to have demonstrated expert knowledge in the field of labor relations, preferably public sector labor relations. They must also "possess the integrity and impartiality necessary to protect the public interest and the interests of the District of Columbia government and its employees." *See* D.C.Code § 1–605.1(b). With respect to issues such as those here under consideration, which fall so plainly within the PERB's area of specialized competence, our review is necessarily deferential.

■ Although the present appeal is from a Superior Court order sustaining a decision by the PERB, we review the PERB's order "as if the appeal had been heard initially in this court." *Public Employee Relations Bd. v. Washington Teachers' Union Local No. 6*, 556 A.2d 206, 207 (D.C.1989). The scope of review is set forth in the CMPA:

> Upon reviewing the final decision of the [PERB], the Court shall determine if it is supported by substantial evidence and not clearly erroneous as a matter of law.

D.C.Code § 1–605.2(12). Moreover, "[e]ven if we were not obliged by [the CMPA] to defer to the PERB on the issue ..., we would elect to do so, in our discretion, because of the PERB's special competence to deal with such questions." *Hawkins v. Hall*, 537 A.2d 571, 575 (D.C.1988). The question is not whether we would decide, if the matter were one left to judicial resolution, that the School Board should be required to bargain with the Union on the disputed items. *Washington Teachers' Union, supra*, 556 A.2d at 210. Even if,

---

**14.** The court stated in *Braniff*, a case in which the statute made no express provision for rehearings, that

> we cannot review an order until administrative remedies have been exhausted. For purposes of review, there was no final order until the rehearing was denied.

*Id.*

**15.** In *Jackson v. United States*, 626 A.2d 878 (D.C.1993), we recently held that a criminal defendant's motion for reduction of sentence—basically a plea for leniency, *see United States v. Hamid*, 461 A.2d 1043, 1044 (D.C.1983), *cert. denied*, 464 U.S. 1046, 104 S.Ct. 718, 79 L.Ed.2d 180 (1984)—did not toll the running of his time for appeal. The result in *Jackson* turned on

considerations not applicable here. *Jackson, supra*, 626 A.2d at 880–81. Under the explicit terms of Super.Ct.Crim.R. 35(b), a motion for reduction of sentence is timely if filed within 120 days of the completion of the appellate process. The Rule thus plainly contemplates that the appellate process shall ordinarily precede a motion for reduction of sentence. Moreover, a motion directed at securing mercy for the accused in terms of sentencing does not, in any meaningful sense, affect the merits of an appeal, in which the question in most instances is whether the defendant was properly adjudicated guilty of the charge or charges against him.

on our own, we would reach a different conclusion from the PERB's, we must defer to the PERB's interpretation unless it is clearly erroneous. *Id.* In other words, if the Union is unable to demonstrate that the PERB's decision is rationally indefensible, we are obliged to sustain it.

The PERB held non-negotiable the Union's proposal that the work year for attendance counsellors shall not exceed the length of the normal work year for teachers and attendance officers, and that the attendance counsellor's work day shall be from 8:30 a.m. to 3:30 p.m. Its conclusions, in our view, were not shown to be unreasonable. *See, e.g., Washington Teachers' Union, supra* (holding that opening day and duty days were not mandatory subjects of collective bargaining); D.C.Code § 1–613.1(a)(2) ("[t]he basic workweek and hours of work for all employees ... shall be established under rules and regulations issued by [the School Board]").[16]

The PERB also ruled that in light of attendance counsellors' contacts with students, which made their responsibilities especially sensitive, the School Board was entitled to implement a drug testing program without being required to bargain with the Union in regard to the Union's proposal that such testing be conducted only upon reasonable suspicion that the individual being tested may have used unlawful drugs. The PERB held that issues such as discipline, training, and procedural aspects of drug testing were negotiable. Although reasonable people might perhaps differ as to the desirability of the School Board's policy of testing in the absence of individualized reasonable suspicion, we conclude that the PERB's decision was based on a rational analysis of competing policy interests, and was consistent with statutory authority authorizing the School Board to determine its own security practices. *See* D.C.Code § 1–618.8(a)(5). Accordingly, we affirm Judge King's decision on the merits.

**16.** The Union's additional contention in this court that the attendance counsellors' working hours are negotiable because they "affect compensation" was not made before the PERB, and

## III.

### CASE NO. 3

Case No. 3 need not detain us long. The scope of review is dispositive.

 On October 18, 1990, the School Board filed a negotiability appeal with the PERB in regard to a number of proposals made by the Union during negotiations for 1990–93. These proposals covered five categories of employees, namely operating engineers, custodial workers, transportation and warehouse service personnel, cafeteria workers, and cafeteria managers. On May 10, 1991, in Opinion No. 273, the PERB held that several of the Union's proposals intruded upon management prerogatives and were therefore non-negotiable. The Union filed a timely petition for review in the Superior Court. Judge King, in a comprehensive and well-reasoned opinion, sustained the PERB's decision in all respects. Substantially for the reasons stated by the trial judge, we affirm.

Judge King correctly perceived that "[t]he essence of the dispute regarding the remaining proposals is whether they concern the establishment of the basic work week (which is not negotiable) or scheduling (which is)." The PERB held that the Union's proposals regarding the basic work week, the basic non-overtime work day, the working hours within each work day, and the prohibition of split shifts, were not mandatory subjects of bargaining. The School Board's prerogatives on these subjects are set forth in D.C.Code § 1–613.-1(a)(2), which provides in pertinent part that

> [t]he basic workweek and hours of work for all employees of the ... Board of Education ... shall be established under rules and regulations issued by the respective Boards....

The deferential character of our review, see Part II, *supra*, precludes us from second-guessing the PERB's decision that the

we decline to entertain it. *See Rafferty v. District of Columbia Zoning Comm'n*, 583 A.2d 169, 178 (D.C.1990).

Unions' proposals were in conflict with this provision.

The Union also proposed that promotions up to regular wage grade be based strictly on seniority. The CMPA, however, explicitly reserves to management the authority to "promote ... employees in positions within the agency." D.C.Code § 1–618.-8(a)(2). The PERB's decision that the School Board was not required to negotiate with the Union regarding this statutory management prerogative was not clearly erroneous.

Finally, § 1–618.8(a)(2) and (5) grant management the "sole right" to assign and transfer employees. The PERB's determination that certain Union proposals were not mandatory subjects of bargaining because they would have restricted management's authority with respect to involuntary transfers and temporary details of employees was not shown by the Union to be clearly erroneous.

For these reasons, and for the additional reasons set forth in greater detail in Judge King's opinion, we conclude that the judge correctly sustained the PERB's disposition of these issues.

## IV.

### CONCLUSION

In No. 90–CV–417, the trial court's order is vacated and the case is remanded for further proceedings consistent with this opinion. In No. 92–CV–217, the judgment is affirmed. In No. 92–CV–319, the judgment is affirmed.

*So ordered.*