# District of Columbia
# Court of Appeals

**No. 14-CV-846**



DISTRICT OF COLUMBIA METROPOLITAN POLICE
    DEPARTMENT,

                             Appellant,

    v.                                **CAP-9192-12**


DISTRICT OF COLUMBIA PUBLIC EMPLOYEE RELATIONS BOARD,
                             Appellee,

    and

FRATERNAL ORDER OF POLICE METROPOLITAN POLICE DEPARTMENT
    LABOR COMMITTEE,

                             Intervenor.

On Appeal from the Superior Court of the District of Columbia
Civil Division

BEFORE: FISHER and BECKWITH, *Associate Judges;* and STEADMAN, *Senior Judge*.

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the order on appeal is affirmed.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: August 4, 2016.

Opinion by Senior Judge John Steadman.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

FILED 8/4/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

No. 14-CV-846

DISTRICT OF COLUMBIA METROPOLITAN POLICE DEPARTMENT, APPELLANT,

V.

DISTRICT OF COLUMBIA PUBLIC EMPLOYEE RELATIONS BOARD, APPELLEE.

AND

FRATERNAL ORDER OF POLICE METROPOLITAN POLICE DEPARTMENT
LABOR COMMITTEE, INTERVENOR.

Appeal from the Superior Court
of the District of Columbia
(CAP-9192-12)

(Hon. Judith N. Macaluso, Trial Judge)

(Argued January 15, 2016                    Decided August 4, 2016)

*Donna M. Murasky*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for appellant.

*Geoffrey H. Simpson*, with whom *Bruce A. Fredrickson* and *Cedar P. Carlton* were on the brief, for appellee.

*Marc L. Wilhite* for intervenor.

Before FISHER and BECKWITH, *Associate Judges*, and STEADMAN, *Senior Judge*.

STEADMAN, *Senior Judge*:   The Metropolitan Police Department (MPD) proposed to terminate the employment of an officer because of off-duty misconduct.   However, an adverse action panel (AAP), after a hearing, recommended a penalty of only a thirty-day suspension.  The issue before us is whether the MPD was nonetheless free to reject that recommendation of the AAP and instead to terminate the officer's employment.   The District of Columbia Public Employee Relations Board (PERB) ruled that the MPD could not do so. We conclude that this was a reasonable interpretation of the controlling regulations and therefore affirm the order on appeal.

## I.  Statement of Facts

MPD Officer Crystal Dunkins was charged in Maryland with several crimes for abusing her two children.  She pleaded guilty to one count of confining an unattended child in exchange for a sentence of five years of probation and the state dropping the remaining charges.  Reviewing these developments, MPD, through then Assistant Chief of Police Shannon P. Cockett, issued a Notice of Proposed Adverse Action, charging Officer Dunkins with conduct unbecoming an officer and conduct constituting a crime.  The proposed penalty was termination.

Officer Dunkins requested a Departmental Hearing before an AAP. The AAP found her guilty of the MPD charges but recommended a thirty-day suspension as the appropriate penalty instead of termination. Assistant Chief Cockett found AAP's recommendation "inconsistent with the misconduct," and imposed the original proposed adverse action of termination.

Officer Dunkins unsuccessfully appealed her termination to the Chief of Police, and then initiated arbitration proceedings, pursuant to a collective bargaining agreement, to review, *inter alia,* whether "the [Assistant Chief of Police] had the authority to impose the penalty proposed in the Notice rather than the [AAP's] recommendation[.]" The arbitrator ruled that 6-A DCMR § 1001.5, 18 D.C. Reg. 417 (Feb. 7, 1972) (§ 1001.5) was the controlling regulation and that, under the plain language of that regulation, MPD could only impose a penalty of thirty days' suspension.[1]

---

[1] Sec. 1001.5 provides, in relevant part:

> upon receipt of the trial board's findings and recommendations, and no appeal to the Mayor has been made, the Chief of Police may either confirm the findings and impose the penalty recommended, reduce the penalty, or may declare the board's proceedings void and refer the case to another regularly appointed trial board.

On appeal by MPD, the PERB affirmed the arbitrator's decision. It agreed that § 1001.5 was the controlling regulation and rejected MPD's arguments to the contrary. MPD then appealed to the Superior Court, which affirmed the PERB decision, and in turn MPD appeals to us.[2]

## II.  Application of § 1001.5

We begin with an iteration of our well-established standard of review when addressing challenges to PERB rulings.[3]  To that end, "[t]his court will not easily disturb a decision of the PERB." *Fraternal Order of Police/Dep't of Corr. Labor Comm. v. District of Columbia Pub. Emp. Relations Bd.*, 973 A.2d 174, 176 (D.C.

---

[2]  Where, as here, an appeal derives from the Superior Court's review of a PERB decision, this court will review as though it was the court of original appellate jurisdiction.  *Gibson v. District of Columbia Pub. Relations Bd.*, 785 A.2d 1238, 1241 (D.C. 2001).

[3]  The PERB in the case before us is technically reviewing a decision by an arbitrator.  Generally, though its authority to set aside an arbitral award is limited, the PERB may do so where an award is "on its face contrary to law and public policy[,]" D.C. Code § 1-605.02 (6) (2001).  "Absent a clear violation of law[,] one evident on the face of the arbitrator's award, the PERB lacks authority to substitute its judgment for the arbitrator's." *Fraternal Order of Police/Dep't of Corr. Labor Comm. v. District of Columbia Pub. Emp. Relations Bd.*, 973 A.2d 174, 177 (D.C. 2009) (internal quotation marks omitted).  However, in the instant case, the PERB gave no indication that it considered its authority in interpreting the relevant regulations to be other than plenary and appeared to make a de novo independent analysis of the legal issue.  We therefore review its decision as its authoritative interpretation of the applicable law and proceed on that basis.

2009). Rather, "we defer to the [PERB's] interpretation of the CMPA unless the interpretation is 'unreasonable in light of the prevailing law or inconsistent with the statute' or is 'plainly erroneous.'" *Id.* (quoting *Doctors Council of the Dist. of Columbia Gen. Hosp. v. District of Columbia Pub. Emp. Relations Bd.*, 914 A.2d 682, 695 (D.C. 2007)). Put differently, we will only set aside a decision of the PERB if it is "rationally indefensible." *Drivers, Chauffeurs, & Helpers Local Union No. 639 v. District of Columbia*, 631 A.2d 1205, 1216 (D.C. 1993); *see also id.* at 1215-16 ("Even if, on our own, we would reach a different conclusion from the PERB's, we must defer to the PERB's interpretation unless it is clearly erroneous.") (citing *Public Emp. Relations Bd. v. Washington Teachers' Union Local No. 6*, 556 A.2d 206, 210 (D.C. 1989)). This considerable deference derives from our recognition that the PERB has "special competence" to address questions arising under the CMPA. *Hawkins v. Hall*, 537 A.2d 571, 575 (D.C. 1988); *see also* D.C. Code § 1-605.01 (1979) (establishing PERB).[4] With this standard of review in mind, we turn to the challenge to the PERB ruling that, under § 1001.5, MPD did not have the authority to impose a sanction on Officer Dunkins greater than that recommended by the AAP.

---

[4] The District argues that no particular deference should be given to the PERB interpretation because, as will be discussed *infra*, at least one other agency has occasion to be involved in personnel disciplinary cases. However, the PERB was clearly acting here within its general statutory role and we see no compelling reason to disregard its interpretation if reasonable.

Prior to January 1, 1980, disciplinary actions involving police officers were governed by a 1906 Act of Congress that established trial boards to adjudicate such proceedings, now codified, as amended, as D.C. Code § 5-133.06 (2012 Repl.). *See* An Act To amend section one of an Act entitled "An Act relating to the Metropolitan police of the District of Columbia," approved February twenty-eighth, nineteen hundred and one, Pub. L. No. 59-205, ¶ 5, 34 Stat. 221, 222 (1906). Regulations were promulgated governing the trial boards and are now found in title 6, subtitle A of the District of Columbia Municipal Regulations. The provision that plays a key role in this appeal is 6-A DCMR § 1001.5, whose text is set forth in footnote 1, *supra*.[5]

In 1979, the Council of the District of Columbia enacted the Comprehensive Merit Personnel Act, generally covering the entire field of employment by the District of Columbia. D.C. Code § 1-601.01-636.03 (2012 Repl.). The Act applied fully to all employees hired after January 1, 1980, a class into which Officer Dunkins fell. As a temporary measure, all existing personnel rules and regulations remained in effect until superseded, D.C. Code § 1-632.01 (a). The Office of Personnel had authority delegated to it by the Mayor to issue new rules

---

[5] Terminology becomes somewhat unclear as used by the parties here. It appears, however, undisputed that the AAP performs the functions of the trial boards established by the 1906 legislation.

and regulations under the Act. It exercised that authority by promulgating regulations first set forth in 30 D.C. Reg. 5874 (Nov. 11, 1983) with subsequent amendments.

The key regulation relating to the issue before us is 6-B DCMR § 1601.5 (a), 53 D.C. Reg. 3974, 3974 (May 12, 2006), which provides as follows:

> Any procedures for handling corrective or adverse actions involving uniformed members of the Metropolitan Police Department, or of the Fire and Emergency Medical Services Department (FEMSD) at the rank of Captain or below provided for by law, or by regulations of the respective departments in effect on the effective date of these regulations, including but not limited to procedures involving trial boards, shall take precedence over the provisions of this chapter to the extent that there is a difference.

The PERB reasoned that this provision preserved the effectiveness of § 1001.5[6] and ruled that it applied to this case, thereby barring the imposition of any penalty greater than that recommended by the AAP.

---

[6] The statute that created trial boards, D.C. Code § 5-133.06 (2012 Repl.), and formed the basis for the promulgation of § 1001.5 was made inapplicable to later-hired police officers by the CMPA. D.C. Code § 1-632.03 (a)(1)(Z) (2012 Repl.). However, as indicated, PERB ruled that § 1001.5 continued to apply because of § 1601.5 (a), which was duly promulgated under the authority of the CMPA.

MPD's challenge to the PERB's reliance on § 1601.5 (a) as incorporating the old § 1001.5 is based on the fact that § 1601.5 (a) only applies to "procedures." MPD argues that § 1001.5 is a substantive provision, not one relating to a "procedure." It analogizes § 1001.5 to a provision governing a sentence that may be imposed in a criminal case, or a cap on damages in a civil case.[7]

While the argument of MPD is not without some force, it does not carry the day in light of our standard of review. The word "procedures" can have an expansive meaning, and nothing in § 1601.5 (a) suggests that the intent was a sharply limited one. MPD points out that the title of § 1001.1 is "Investigation and Findings" as opposed to § 1000, which is titled "Rules of Procedure." However, Chapter A10 of Title 6 (of which both are subsections) is headed generally

---

[7] We do not understand the MPD to take issue with the proposition that if in fact § 1001.5 is applicable here, as the PERB ruled, its provisions bar the imposition of a greater penalty than that recommended by the AAP. MPD's present position, as argued to us, is that, since in its view § 1001.5 is inapplicable by its very terms, the controlling provision is 6-B DCMR § 1613.2. MPD reads this provision as authorizing the imposition of the originally proposed penalty; viz., termination. See the discussion in part III of this opinion. MPD's long-standing position since the passage of the CMPA, now reflected in its General Order 1202.2 (V)(K)(8) (2006), dealing with "Disciplinary Procedures and Processes," is that the deciding officer can impose the penalty originally recommended and reject the recommendation of the AAP. However, as the PERB noted, this provision is overridden by a duly promulgated regulation, such as § 1613.2 and § 1001.5. *See District of Columbia v. Henderson*, 710 A.2d 874, 877 (D.C. 1998) (noting that the MPD General Order cannot override a regulation, in that case 18 DCMR § 2002.2 (b)).

"Disciplinary Procedures," and indeed, the MPD General Order which the MPD claims is controlling is itself headed "Disciplinary Procedures and Processes." See *supra* note 7; *cf. Morton v. Mancari*, 417 U.S. 535, 549 (1974) ("[R]epeals by implication are not favored.") (quoted with approval in *Owens v. District of Columbia*, 993 A.2d 1085, 1088 (D.C. 2010) (citing *District of Columbia Metro. Police Dep't v. Perry*, 638 A.2d 1138, 1144 (D.C. 1994))). It was not illogical to make no distinction between pre- and post-CMPA hires by the MPD as to the imposition of disciplinary sanctions, and the PERB interpretation merely continued a long-standing pre-existent practice. In short, we see no basis to conclude that the ruling by the PERB as to the application to this case of § 1001.5 is an unreasonable one.[8]

### III. Section 1613.1

At the end of its order, having ruled that § 1001.5 controls this appeal, the PERB added a statement that even if § 1001.5 were not applicable, the comparable provision in the applicable regulation, 6-B DCMR § 1613.1 & .2, 47 D.C. Reg. 7094, 7103 (Sept. 1, 2000), would lead to the same result. Those provisions read:

---

[8] MPD complains about the relative brevity of the PERB analysis of the § 1001.5 issue. However, it was given extensive analysis in prior arbitration decisions and it appears plain that the PERB considered it was making an important interpretation of the applicable law. See *supra* note 3.

> 1613.1      The deciding official, after considering the employee's response and the report and recommendation of the hearing officer pursuant to § 1612, when applicable, shall issue a final decision.
>
> 1613.2      The deciding official shall either sustain the penalty proposed, reduce it, remand the action with instruction for further consideration, or dismiss the action with or without prejudice, but in no event shall he or she increase the penalty.

The PERB simply said: "Thus, § 1613.2 precludes a deciding official from increasing the penalty recommended by a hearing officer by whatever name." But it then immediately added: "If § 1613.2 did not preclude increasing the penalty, then § 1001.5 would supersede it and still preclude the assistant chief from increasing the penalty." Thus, it is clear that the eventual controlling ruling relates to the continued application of § 1001.5.

Nonetheless, MPD would have us rule on the validity of the PERB interpretation of § 1613.2. MPD focuses on the language "penalty proposed." It asserts that this phrase refers to the penalty originally proposed—in this case, termination—rather than the penalty recommended by the AAP. It asserts that this meaning of "penalty proposed" was definitively established by our decision in *Hutchinson v. District of Columbia Office of Emp. Appeals*, 710 A.2d 227 (D.C. 1998).

In *Hutchinson*, a deputy fire chief proposed that Hutchinson, an employee of the District of Columbia Fire Department, be removed for inefficiency. *Id.* at 229. Another deputy fire chief, serving as a "disinterested designee," recommended a ninety-day suspension. Nonetheless, the Fire Chief opted to remove Hutchinson. Hutchinson exercised his right to appeal to the Office of Employee Appeals (OEA) under D.C. Code § 1-606.03 (a). An administrative law judge of the OEA upheld Hutchinson's removal, and the full OEA denied Hutchinson's subsequent petition for review. Hutchinson petitioned for reversal by the Superior Court, which was denied, and in turn to us.

Among other things, Hutchinson challenged the imposition of termination rather than the ninety-day suspension recommended by the disinterested designee. We noted that his argument turned on the interpretation of D.C. Personnel Regs. § 1614.4[9] (1987), which was in all relevant respects identical to § 1613.2.[10] We deferred to the interpretation of the OEA that the "penalty proposed" referred to the original proposed sanction rather than that recommended by the disinterested designee, observing that "[t]he purpose of the OEA is to review certain personnel decisions of other District of Columbia agencies" and that "the OEA has developed

---

[9] 34 D.C. Reg. 1845, 1858 (Mar. 20, 1987).

[10] 47 D.C. Reg. 7094, 7103 (Sept. 1, 2000).

an expertise in administering and enforcing the District of Columbia Personnel Regulations." *Hutchinson*, 710 A.2d at 234.

On its face, therefore, the PERB's summary interpretation of § 1613.2 runs counter to that of the OEA upheld by us in *Hutchinson.* But in *Hutchinson*, as presented to us, the interpretation of the relevant section was conclusive to the appeal. That is not true here. *Hutchinson* involved a Fire Department employee, not an employee of the MPD, and there is no suggestion in that opinion that the Fire Department had a pre-existing provision comparable to § 1001.5, which was a regulation pertaining purely to the MPD. Nor is there any compelling reason why the interpretation by the OEA, acting within its statutory authority, should be favored over that of the PERB, also acting within its statutory authority to review arbitration decisions.

In this posture, we see no reason to reach out to decide an issue not squarely presented to us in this appeal. If we were to review the PERB interpretation, we would want to do so in a context where the PERB addressed the issue as determinative and engaged in an analysis of its interpretation of § 1613.2 and

considered carefully our decision in *Hutchinson* and the interpretation of that section by OEA. None of that is presented here.[11]

## IV. Conclusion

In sum, we see no basis to hold that the PERB's affirmance of the arbitral award, applying § 1001.5 as a procedural rule via § 1601.5 (a), was rationally indefensible. *Drivers*, *supra*, 631 A.2d at 1216. The PERB order is, therefore,

*Affirmed.*

---

[11] Of course, with the potential conflicting interpretations identified, the executive and legislative branches are fully empowered to resolve the conflict prospectively through legislative or regulatory means. Indeed, it appears that Chapter 16 of Title 6-B has very recently been extensively revised to "implement a new disciplinary and grievance program," effective February 3, 2016. *See* 63 D.C. Reg. 1265. Since no party has cited these amendments or briefed the issue, we take no position with respect to this development.